# CHARLESTON.

I. O. O. F. of W. Va. *v.* Board of Education.

Submitted January 11, 1922.   Decided January 17, 1922.

1.   Mandamus—*Directors of Fraternal Organization's Orphans' Home May Maintain Mandamus Against Board of School Directors to Secure Admission of Children to Schools.*

Under Barnes' Code, 1918, chapter 55-A, sections 32-b I and 32-b II, authorizing grand lodges of fraternal organizations to establish homes for the care and support of orphans, to adopt and prescribe rules for the control of such homes, and to appoint from their own memberships boards of directors with corporate powers, and giving such boards so created authority to sue, mandamus may be maintained by such a board of directors to secure admission of children admitted to such home or homes to the public schools where such home or homes are located.   (p. 12).

90 W. Va.

2.   SCHOOLS AND SCHOOL DISTRICTS—*When Contract to pay Tuition for Children of Orphans Home Becomes Nudum Pactum.*

A fraternal organization, organized under Barnes' Code, 1918, chapter 55-A, section 32-b I, established outside an independent school district a home for the care and support of orphans of its deceased members, and to obtain the benefit of free schools in said district for the children admitted to the home, contracted with the board of education of the district to pay tuition, whether the home should be included within the said district or not. Subsequently the boundaries of the district were extended so as to include the home; the children of the home became entitled to attend the schools of said district without payment of tuition, said contract becoming a mere nudum pactum, without consideration and no longer binding on the fraternal organization. (p. 12).

3.   SAME—*A Child Need Not Have Legal Domicile Where Public School is Located to Entitle it to Attend.*

Public schools are required by the statute to be maintained for all persons within the school district over the age of six and under twenty-one years, and it is not essential to the right of a child to attend a public school that it should have a legal domicile in the place in which the school is located. (p. 15).

4.   SAME—*Temporary Residence Not Solely for Benefit of Schools. and With Intention of Removal Thereafter Entitles a Child to Attend Without Paying Tuition.*

The residence necessary to entitle a child to attend public schools without payment of tuition is not such as would be required to establish a right to vote, or which would fix the liability for the support of a pauper, or for the purpose of determining the right of administration of its estate, but a residence even for a temporary purpose, not solely to enjoy the benefits of the free schools and with the intention of removal as soon as that purpose is accomplished, is sufficient. (p. 15).

5.   SAME—*Every Child Entitled Without Paying Tuition to Attend Schools of District in Which Actually Residing Whether or Not Legal Domicile of Parents or Guardian.*

Every child in this state is entitled without payment of tuition to attend the public schools in the district in which it actually resides for the time being, whether that be its legal domicile or the legal domicile of its parents or guardian or not. (p. 15).

90 W. Va.

6. SAME—*Inmates of Orphans' Home May Attend Schools of District in Which Home is Situated Without Paying Tuition or Presenting Transfers.*

Under the statute requiring that schools be open to all youths between the ages of six and twenty-one for the full length of the school term provided in that district, inmates of an orphans' home within an independent school district, whose custody and care has been surrendered to such home by their parents or guardian, having no other home, and residing there permanently, though admitted there from other school districts of the state, are actual residents of such independent school district, and have a right to attend the public schools of such district without payment of tuition, and without presenting transfers from the boards of education of the several districts whence they came to the board of such independent district. (p. 16).

Error to Circuit Court, Randolph County.

Petition by the Grand Lodge of the Independent Order of Odd Fellows of West Virginia against the Board of Education of the Independent School District of Elkins and Boyd Wees and another, members of said board, and W. W. Trent, superintendent of schools of said district, for peremptory writ of mandamus to compel the admission of children from the petitioner's orphans' home to the public schools of said district, in which an alternative writ was issued, to which the defendants demurred. Demurrer sustained, writ quashed, and judgment entered against the petitioner, and the petitioner brings error.

*Reversed and writ of mandamus awarded.*

*W. B. & E. L. Maxwell,* and *S. P. Bell,* for plaintiff in error.

*Samuel T. Spears,* for defendant in error.

MEREDITH, JUDGE:

The petitioner applied by petition for a peremptory writ of mandamus against the Board of Education of the Independent School District of Elkins, Boyd Wees and Dr. C. H. Hall, the only members of said Board, and W. W. Trent, superintendent of schools of said district, alleging that the

Grand Lodge of the Independent Order of Odd Fellows of West Virginia, under authority of chapter 55-A, section 32-b, Barnes Code, 1918, has acquired about 100 acres of land near the city of Elkins and has established a home thereon for "the care and support of the orphans and widows of deceased members and of disabled and aged members of said organization in indigent circumstances," and has admitted thereto 126 children between the ages of six and twenty-one years, as well as other persons eligible thereto, and that said Home is located within the boundaries of said Independent School District, and that said children are residents of said school district and are entitled to attend the public schools therein; that some of said children may have no parents living, and as to the large majority thereof one of such parents is dead, and when the children of a deceased parent are placed in said Home they are placed there under the absolute care and control of the proper authorities of said Grand Lodge, the living parent or parents releasing all claim over the care and custody of said children; that all of said children since the 12th day of September, 1921 (that being the opening date of the schools of said district for the present school year) have been excluded from said schools by the defendants because the petitioner refused to pay the tuition demanded by said defendants, no tuition being required of other children residing in said school district. Petitioner also shows that said children were regularly enumerated by the school authorities as required by law.

An alternative writ was issued returnable October 4, 1921, to which the defendants entered a demurrer, made a motion to quash and also made return.

Petitioner demurred to said return and the circuit court, without passing on the sufficiency of the return, sustained defendants' demurrer, quashed the writ and rendered judgment for costs against petitioner. The case is here to be heard upon its merits.

Defendants present three defenses:

First, that the petitioners, S. B. Hart, J. D. Silcott, Henry Woody, S. P. Bell and S. M. Kendall, comprising the Board of Directors of said Home, and appointed as such by said

Grand Lodge to manage said Home according to the rules and regulations adopted by said Grand Lodge, do not show that they have been authorized to bring this proceeding. This objection has not been insisted upon in the argument, but we think it sufficiently appears that they have immediate control of said Home and the children therein, and that they have the right to maintain this action in the name of the Grand Lodge.

Second, that said Home was originally outside the boundaries of said Independent School District and that the Legislature in 1915 enacted a statute authorizing the extension of said boundaries so as to include said Home within said school district upon a vote of the people therefor, and that before such vote was had in 1916, to-wit, on July 29, 1915, said Grand Lodge and said Board of Education entered into a written contract whereby it was agreed that upon the annual payment to said Board of Education by said Grand Lodge of a sum equal to one-half of the annual cost of instruction of said children of said Home in the public schools of Elkins, as ascertained and certified to by said Board, said payment beginning with and including the school year 1913-14, said children resident of said Home should be permitted to attend the public schools of said Independent School District without further charge, whether said Home should be included in said Independent School District or not, the cost for instruction per capita to be based each year on the enrollment in the schools as shown by the official school records; that said Grand Lodge paid according to said contract for all years prior to and including the school year 1918-19, but refused to pay for the school years 1919-20 and 1920-21, and that said Board was willing to carry out said contract if said Grand Lodge would make payment according to its agreement. The Home was taken into said Independent School District by vote of the people in 1916, and in our view, as hereinafter expressed, said contract was no longer binding on said Grand Lodge. If the children had a right without payment of tuition to attend said schools, then any agreement by said Grand Lodge to pay such tuition was

without consideration and therefore void, and said contract constitutes no defense to this action.

Third, the chief defense relied upon is that the children living in said Home, although living within the bounds of said school district, have no legal residence within the district in the meaning of the school law, nor such residence as to entitle them to attend the public schools therein free of charge. Defendants claim that the residence of these children is where their respective parents or guardians may reside, to-wit, in the various school districts throughout the state whence they came, and that in order to obtain entrance to the Elkins schools they must present "transfers" from the Boards of Education of their respective districts to the Board of Education of the Independent School District of Elkins so that the latter may receive pay from said respective Boards of Education, as provided by chapter 2, section 59, Acts 1919. We hold that the section providing for "transfers" of pupils from one school district to another has no application in this case. The children residing in this Home do not need "transfers" to entitle them to attend the public schools of the Independent School District of Elkins. They live in that school district; they make that their home; they are admitted to it to remain until they become twenty-one years of age unless sooner discharged therefrom; indeed it is shown in the petition that they have no other home.

In construing the former school statute, Code, 1916, chapter 45, section 69, which provides that children between six and twenty-one years of age residing in a sub-district or independent district "with intent to make such district their home," this court, in the case of *Morrison* v. *Smith-Pocahontas Coal Co.*, 88 W. Va. 158, 106 S. E. 448, held that a boy over fourteen years of age who was working in a coal mine in Wyoming County, West Virginia, but whose father lived in the state of Virginia, had a right to attend the free schools in this state, and that it was unlawful to employ him in a coal mine in West Virginia while such schools were in session. It was contended there that the residence of the father was the place of residence of the boy and that con-

90 W. Va.

sequently it was not unlawful to employ him in the mines of this state while the schools were in session, but the court held that although "the domicile of the plaintiff in this case for some purposes may have been that of his parents in Virginia, nevertheless as he left his home in Virginia, with or without their consent, and was allowed to labor and appropriate his earnings, and was liable to become a citizen and resident of this state, the state thereby became interested in his education and good citizenship."

Our present statutes do not use the word "home." Section 54, chapter 2, Acts 1919, says: "The schools shall be open to all youths between the ages of six and twenty-one for the full length of the school term provided in their district." Section 91 of the same act provides: "The teacher or teachers in each sub-district shall annually before the close of the school or schools therein, and not later than the first day of April, take and report an enumeration of all the youth residing in the sub-district who will be between the ages of six and twenty-one on the first day of July, following."

The defendants complied with this statute, and had these 126 children enumerated as children of school age residing within the Independent School District of Elkins; they were not enumerated and could not be enumerated in the several school districts throughout the state from which they respectively came. The teachers in those several districts would not find them there, because they are not there, do not reside there, and in most instances would probably know nothing about them.

Section 122 of the same chapter provides that "Every person" (subject to certain exceptions) "who has legal, or actual charge of a child or children not less than seven nor more than fourteen years of age shall cause such child or children each year to attend a free day school for the full school term of the district or independent district in which such person resides."

The authorities governing the Home where these children reside have legal and actual charge of them, and it is their duty to cause them to attend school. They would not be

permitted to shift this responsibility to the parent or guardian, if any, residing in a district in some remote part of the state.

In the Morrison case above cited, we decided that it was not essential to the right of a child to attend the public schools of the state that it should have a legal domicile in the place where the school is held; the schools are required to be maintained for all persons in the district over the age of six and under twenty-one. The residence required under our school law is not such residence as would be required to establish a right to vote, or which would fix liability of a city or county for the support of a pauper, or for the purpose of determining the rights of administration of his estate. The right to attend school is not limited to the place of the legal domicile. A residence, even for a temporary purpose, in a school district, is sufficient to entitle children to attend school there. We do not mean to say that a child sent to a school district by parents residing outside of it, solely for the purpose of taking advantage of the free schools there, would have the right to attend such schools, as that is not the question before us; but a man may leave his legal domicile, for a temporary purpose and reside in a different part of the state, and not lose his legal domicile or right to vote there. His children, however, would not be obliged to attend school in the place where he has his legal domicile. Within the meaning of the school laws of this state they could attend school in the district where he temporarily resides, without payment of tuition and without school transfers. The only requirement, so far as residence is concerned, is dwelling in the school district. Every child of school age in this state is entitled to attend the public schools in the district in which it actually resides for the time being, whether that be the place of its legal domicile, or the legal domicile of its parents or guardian, or not.

Permanent custody and control of these children has been surrendered or released to the authorities of this Home by the parents or guardians of the children. They have no other home or abiding place, and they are entitled to attend

school in the Independent School District of Elkins, just the same as children whose parents reside there.

We have examined all the authorities cited by counsel for defendants, and with especial care the cases of *Fry* v. *Upper Swatara Township,* 164 Pa. 603, 30 Atl. 507, 26 L. R. A. 581, and *Lake Farm* v. *District Board,* 179 Mich. 171, 146 N. W. 115, 51 L. R. A. (N. S.) 234. It will be seen by an examination of these cases that the children there excluded were being cared for by charitable institutions chartered for the support, care and education of needy children. In the present case there is nothing in our statute (chapter 55-A, section 32-b I, II, III, IV and V, Hogg's Code, 1913) authorizing the establishing of such homes by fraternal organizations which requires or even authorizes such organizations to maintain a home for the *education* of the children who may be placed therein. The language of the statute is: ''for the care and support of orphans,'' and it is silent on the question of education and there is no legal obligation upon such fraternal organizations operating under such statute to provide for the education of the children entrusted to their care.

The identical question involved here was determined by the Supreme Court of Illinois in the case of *Ashley et als.* v. *Board of Education et als.,* 275 Ill. 274, 114 N. E. 20. In that case 79 children between the ages of six and fifteen years, who were inmates of the Illinois Masonic Orphans' Home in LaGrange, and within School District No. 102 of Cook County, were excluded from the schools of that District by order of the Board of Education, unless said Home would pay tuition for them. These children united in a bill to enjoin the execution of the Board's order of exclusion. The Illinois Masonic Orphans' Home was an Illinois corporation, and maintained such home for the support, care and custody of children between the ages of three and fifteen years, children of Master Masons who were committed to its care. The parents, relatives or guardians of these children voluntarily released or surrendered their custody of these children to said Home where they were required to remain until disposed of under its rules. Under the Illi-

nois statute, the school authorities were required "to establish and keep in operation for at least seven months in each year, and longer, if practicable, a sufficient number of free schools for the accommodation of all persons in the district over the age of six and under twenty-one years and to secure for all such persons the right and opportunity to an equal education in such schools." It was contended in that case, as in the case at bar, that only residents of the school district were entitled to the benefit of the schools without payment of tuition and that these children could not voluntarily change their place of residence, and that their legal residence and domicile was in the place where their parents resided, and that they were entitled to attend the free schools in District No 102 only upon being transferred to such schools in the manner authorized by law from the districts in which they resided, with the consent of the directors of both districts. It will be observed that the Illinois statute in all respects was the same as that of this state. In holding that these children had the right to attend the public schools of District No. 102 without the payment of tuition, the Illinois court said:

"The appellants are all actual residents of school district No 102 in the ordinary and popular meaning of that term. They have no other home. They have lived there for some time with the intention of remaining indefinitely and have no present intention of going elsewhere. They were delivered by their parents or relatives or persons having their actual custody to the care of the Illinois Masonic Orphans' Home for the purpose of providing for their maintenance and rearing in the place where that home is located until they attain the age of fifteen years, and there is no present intention on the part of anybody having any authority or control over the minors that this residence should be changed. In the case of poor persons it is frequently necessary, particularly when one of the parents is dead or disabled or for any reason can not or will not assist in the support of his family, that homes shall be found for the children in places other than those where the parents reside, and under such circumstances the child is entitled to be enumerat-

ed among the school children and to attend the school in the district in which it actually resides, as a matter of right, not dependent upon the payment of tuition by the school district in which the parents, reside or the consent of the directors of that school district or of the directors of the district in which such child actually resides. Cases have been cited from other states for and against this position. They are of little value in the determination of this question in the construction of our own statute.''

It is contended by defendants that to permit these children to attend the public schools of the Independent School District of Elkins, without the payment of tuition or without requiring transfers from the various districts whence they originally came, will work great hardship on the tax-payers of the Independent School District, and especially so, since the property constituting the Home is exempt from taxation. This may be so; but if so, relief must be obtained from the legislature and not from the courts. The courts do not make our school law, nor do they determine the objects of taxation for school purposes.

We are, therefore, of opinion that the circuit court erred in sustaining defendants' demurrer to, and in quashing the alternative writ; said demurrer and motion to quash are accordingly over-ruled, petitioner's demurrer to defendants' return is sustained and the peremptory writ prayed for is awarded; the judgment of the circuit court is reversed and petitioner is allowed its costs both in this court and in the court below, against the respondent Board of Education.

*Reversed, and writ of mandamus awarded.*