LEVERNE HOSIER, by her next friend and father
ALMOND HOSIER, RALSTON FREELAND, HYSENTH
FREELAND and RANDE JOSEPH, by their next friend
and mother, MRS. DAPHNE DE VALLARD, on behalf of them-
selves and others, Plaintiffs

v.

DR. MELVIN EVANS, Governor of the Virgin Islands,
PHILLIP A. GERARD, Commissioner of Education,
WILFRED JAMES, Deputy Commissioner of Education
for St. Croix

and

VIVIAN ANDUZE, JOSEPH AUBAIN, GERARD CHRISTIAN,
THELMA DALMIDA, JOSEPH JERZ, EIRENE McDONALD,
and RUFUS MARTIN, Members of the V.I. Board of
Education, Defendants

Civil No. 332-1969

District Court of the Virgin Islands
Div. of St. Croix

June 26, 1970

VIRGIN ISLANDS COMMUNITY LEGAL SERVICES (RICHARD D. UNRUH, ESQ., LEROY A. MERCER, ESQ.; On the Brief, CHARLES L. DOSTAL, JR., ESQ.), *for plaintiffs*

PETER J. O'DEA, ESQ., *Attorney General*, IRWIN W. SILVER-LIGHT, ESQ., *Assistant Attorney General, for defendants*

CHRISTIAN, *Judge*

## MEMORANDUM OPINION

The plaintiffs herein are minor children of school age, each of whom has brought this action by "next friend," one of his parents. They are all aliens and the children of alien parents. They are all lawfully in the Virgin Islands as "non-immigrant" visitors. The period of the "visit" in some cases, approximates, or coincides with, the bonding period of those parents who are "non-immigrants," admitted on working bonds, i.e., six months. In the cases of those plaintiffs whose parents enjoy "immigrant" status, their visits are for such periods of time as the United States Immigration and Naturalization Service may grant. In any case the visiting period may be extended or renewed, and particularly in the cases of the non-immigrant parents, here on work bond, renewal follows as a matter of course unless the employer, for one reason or another cancels the bond.

Plaintiffs pray for declaratory and injunctive relief for themselves, and on behalf of all other non-citizen children, similarly situated. They ask that the Court adjudge that they, as well as all members of the class on whose behalf they sue, are entitled to attend the public schools of the Virgin Islands, and that the Court also enjoin defendants to refrain from excluding plaintiffs and the members of their class from the said public schools.

Named as defendants in the suit are the Governor of the Virgin Islands, the Commissioner of Education, the Deputy Commissioner of Education for St. Croix, and the members of the Virgin Islands Board of Education.

Plaintiffs bring their action pursuant to the provisions of Title 42 U.S.C. § 1983 and Title 28 U.S.C. §§ 1343(3), 2201 and 2202.[1] They ground their joint claim for relief

[1] 42 U.S.C. § 1983: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or

31

on violations of section 3 of the Revised Organic Act of the V.I. which extends to that territory, among other Articles and Amendments, or portions of them, the "due process" and "equal protection" clauses of the Fourteenth Amendment of the Constitution of the United States.

Defendants in their answer make formal denial of the material allegations of the complaint, and further answering contend that the minor plaintiffs, being non-resident aliens, and of "non-immigrant" status, are but temporary visitors to the Virgin Islands and therefore lack standing to bring this suit. Additionally, defendants contend that the action should be dismissed as the complaint fails to state a cause of action upon which relief can be granted.

█ Despite defendants' denial of the material allegations of the complaint in their answer, counsel for defendants, at oral argument, adopted the statement of facts set forth in plaintiffs' memorandum in support of their motion for summary judgment.[2] Indeed no substantial fact issue is raised by the pleading and I find the matter to be ripe for summary judgment.

---

causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

28 U.S.C. § 1343: The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: ... (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; ....

28 U.S.C. § 2201: In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2202: Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

[2] The portions of plaintiffs' memorandum to which counsel took exception either staged conclusions or related to matters of law.

■ Defendants rely somewhat heavily on the nice legal distinctions revolving around residence, i.e., domicile. They would have this case turn on the implications, rights and limitations which flow from the concept of domicile. For the purpose of qualification or entitlement to public education, however, I disregard such formalistic distinctions as irrelevant and inapt, and I adhere to the concept of residence in the sense of physical presence in a place of abode. See Grand Lodge I.O.D.F. of West Virginia v. Board of Education, 90 W.Va. 8, 110 S.E. 440 (1922); State v. Cotton, 67 S.D. 63, 289 N.W. 71 (1939); 47 Am. Jur., Schools, § 152.

■ Of more than passing significance is the fact that the Virgin Islands Board of Education, the agency vested with the rule making authority in the Virgin Islands[3] has promulgated no rules establishing residence requirements which must be met as a condition of enrollment in the public schools. It is, therefore, appropriate in the circumstances of this case that we hark back to the generally understood and accepted view, that a child becomes a resident, for the purpose of public school attendance, as soon as he acquires a home in a school district, be that home permanent or temporary in nature. In Re Sheard, 163 N.E.2d 86 (1959); Cline v. Knight, 137 P.2d 680 (1943); Grand Lodge I.OOF v. Board of Education, supra; State v. Cotton, supra.

We are here dealing with an aspect of twentieth century life so fundamental as to be fittingly considered the corner stone of a vibrant and viable republican form of democracy, such as we so proudly expouse, i.e., free and unrestricted public education. Following in the footsteps of our Federal Government, we too "... must consider public education in the light of its full development and its pres-

---

[3] See 17 V.I.C. § 21(a)(1), (6).

ent place in American life . . . ." Brown v. Board of Education, 347 U.S. 483, 492 (1954). With like perception we must recognize that

"Today, education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society . . . . Today it is the principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. . . ." Brown v. Board of Education, supra at p. 493.

▆ The foregoing, it will be remembered, was said by the Supreme Court of the United States with respect to black children, citizens of the United States, in striking down the "separate but equal," so-called, system of public education. Here we address ourselves to the problem of alien children in this territory, worse in plight, for they are offered no free, public education at all. As did the court in Brown v. Board of Education, supra, I hold that public education, ". . . where the state has undertaken to provide it, is a right which must be made available to all on equal terms."

▆ Once we start from the premise posited by the Supreme Court of the United States in Levy v. Louisiana, 391 U.S. 68, 70 (1968), as it spoke of illegitimate children, and take full cognizance of the fact that aliens, likewise, are not "non persons," but rather are ". . . humans, live, and have their being . . . " the conclusion is inescapable that alien children, lawfully within this territory, in the status of these plaintiffs, are unquestionably "persons" within the Equal Protection Clause of the Fourteenth Amendment.

34

■ ■ So long settled as to be beyond the pale of controversy is the proposition that the long reach of the Fourteenth Amendment extends to the alien. Yick Wo v. Hopkins, 118 U.S. 356 (1886). Limited only by a few exceptions, the non-citizen has a right to work at his calling. Takahashi v. Fish Commissioner, 334 U.S. 410 (1948); Traux v. Raich, 239 U.S. 33 (1915). But even those once hallowed preserves, historically "off limits" to the non-citizen, may have seen their best days. No longer is the right of an alien to own land open to serious question. Sei Fujii v. State, 32 Cal.2d 718, 242 P.2d 617 (1952). It is now far too late in the day to adopt a policy which acts as a government imposed stumbling block in his path as he reaches for an education, the better to enable him to engage in the productive endeavor by means of which he may become a landowner. Thus in Halaby v. Board of Directors, 123 N.E.2d 3 (1954) an attempt to set up "Municipal citizenship", in turn dependent upon United States Citizenship, as a qualifying condition for admission to a public institution (a university in this case) and in this wise close the doors of the university to alien residents, was struck down.

Deliberate and determined research has not uncovered a single case in point. This paucity may in itself indicate that our territory traipses alone in its march to the rear. Admittedly the opposite inference is a possibility. It is, to me, inconceivable, however, that the alien population in the continental United States could for this long have remained so quiescent, in the face of so grave a problem. I much prefer to think that this silence in the halls of justice is born of a national realization that the special "public welfare" theory, here advanced by defendants, is but a slender reed upon which to rest so great a load.

■ ■ Defendants contend that the Legislature of the Virgin Islands is authorized to establish categories or

classes of persons who may be admitted or excluded from the public schools so long as such classes or categories bear a reasonable relation to the power of the Legislature to enact laws for the protection of the public welfare. With this general principle, so well settled, none can quarrel, and it must be admitted that in this effort, a legislature is to be given great latitude. Levy v. Louisiana, supra; Williamson v. Lee Optical Co., 348 U.S. 483, 489; Morey v. Doud, 354 U.S. 457, 465–466. This legislative power is not without its limitations, however, especially where basic civil rights are concerned, Skinner v. Oklahoma, 316 U.S. 535 (1942), and those classifications which invade or restrain fundamental rights are to be " . . . closely scrutinized and carefully confined." Harper v. Virginia Board of Elections, 383 U.S. 663, 670 (1966).

▉▉ Defendants make much of the influx of aliens into the territory over the last few years and suggest that the cost of admitting these plaintiffs and all others in the class to the public schools would create an undue burden on the Government of the Virgin Islands. They would cover themselves with the cloak of "already severely inadequate"[4] facilities which, by the granting of the relief here prayed for, would be rendered " . . . so chaotic as to totally destroy public education for all so entitled."[5] The short answer to that argument is that fundamental rights guaranteed by the Constitution may be neither denied nor abridged solely because their implementation requires the expenditure of public funds. For such purposes, the Government must raise the funds. Griffin v. County School Board, 377 U.S. 218 (1964); U.S. v. School District of Cook County ((DCND) Ill., E.D.) 301 F.Supp. 201, 232 (1969). What defendants advance as an inescapable conclusion—that relief must be denied— " . . . until

[4] Defendants' memorandum, p. 4.
[5] Ibid.

such time as the educational facilities are adequate . . .".[6] I reject out of hand as constitutionally impermissible, once the plaintiffs' right be established. These litigants may not be relegated to such a state of neglect, "benign" or otherwise.

Defendants stress that it is in the interest of the public weal that plaintiffs be debarred from the public schools, except upon such special conditions as they may prescribe. They would bottom this position with unbending reliance on the police power of the government. But what is in the public interest cannot be permanently catalogued on some notion of what was deemed best at a given time. The public's best interest inevitably changes with changing conditions and changing times. If ever sound public policy dictated that non-citizens be barred from the public schools, it can hardly be argued that the criteria and conditions which then dictated such policy still persist.

The exact number of children in the class represented by these plaintiffs has not been made known to the court. The Government has indicated that it can throw no light on this subject. Counsel for plaintiffs has informed the Court that in St. Croix alone upwards of three hundred and eighty alien children living on that island applied for and were denied admission to the public schools. An Office of Economic Opportunity survey of August 25, 1969, presumably covering the entire Virgin Islands was also made available to the court by plaintiffs' counsel. That study indicates that there are almost nine hundred alien children of school age living in the Virgin Islands and projects that figure into the thousands within the very near future. Without standing on the accuracy of those figures it is safe to say that the class represented by these plaintiffs now number several hundred. It cannot be gainsaid that it is manifestly contrary to the public good in this

---

[6] Ibid.

territory to develop and foster a ghetto of ignorance, with countless numbers of untrained, untutored and perhaps untended children (since their parents are bonded workers) roaming the streets, this with the concomitant evils of crime, immorality and general social degeneracy. In the public interest a generation of illiterates is to be avoided, whatever the financial cost. I am of the opinion that the most compelling of public concern militates in favor of the prompt admission of these plaintiffs, and all others of their class, to the public schools.

██ ██ Defendants' "public welfare" argument may be considerably beside the point for I am not persuaded that we are dealing as much with an expressed policy of the Legislature of the Virgin Islands, as with principles laid down by the Virgin Islands Board of Education. Recognizing that the promulgated rules and regulations are accorded force of law, defendants go on to urge that the words of 17 V.I.C. § 82[7] "All children . . ." are limited and qualified by section 103–1 of the Regulations of the Department of Education.[8] I am unable to agree with defend-

---

[7] 17 V.I.C. § 82: All children shall attend school from the beginning of the school year nearest their sixth birthday, and they shall continue to attend school regularly until the expiration of the school year nearest their sixteenth birthday. Provided, however, the following categories of school age children are excepted:
 (a) those who graduate from high school before the age of 16;
 (b) those who are 14 years of age or over and have been found by tests and examination to be incapable of profiting from instructions;
 (c) those physically or mentally incapacitated.

[8] 17 V.I.C. § 103–1:* Noncitizens of school age may be enrolled in public elementary and secondary classes, provided that the enrollees:
 (1) are in good health;
 (2) present necessary school records or take a placement test;
 (3) do not cause the number of pupils in any class to exceed prescribed standards;
 (4) shall be given preference if their parents have worked legally in the Virgin Islands for at least two consecutive years and expect to remain in employment;
 (5) present satisfactory evidence of the inability of the off-island guardians to supervise them.
 It is further provided that the above conditions shall not apply to special education and multi-graded classes.
* Should probably read 17 V.I.R.&R. § 103–1.

ants that the words of 17 V.I.C. § 82 are to be so restricted.

 It is clear that the Board must have so construed the statute, but I find myself at loggerheads with that body. Allowing, as I must, great weight to that administrative agency's statutory construction, Doe v. Shapiro, 302 F.Supp. 761 (D.C. Con. 1949), its patent error, as I view it, gives me leave to disregard their judgment, Monroe v. Livingston, 161 S.E.2d 243 (1968), particularly since that administrative interpretation, is inconsistent with the obvious purpose of the statute. In Re Chin Thloot Har Wong, 224 F.Supp. 155 (D.C. N.Y. 1963); U.S. v. Ekberg, 291 F.2d 913 (8 Cir. 1961).

 Nowhere in Title 17 of the Virgin Islands Code or in its scant legislative history does one find a reliable clue to the legislative intent in the use of words "all children . . .". By the same token there is no justification for as narrow a reading of the words as, it seems, the Board has adopted. Since nothing in the statute points to the contrary I feel impelled to give the words their plain meaning, Holland v. U.S., 310 F.2d 631 (6 Cir. 1962); Alligood v. Florida Real Estate Commission, 156 So.2d 701, 705 (1963); Green v. Robertshaw-Fulton Co., 204 F.Supp. 117 (D.C. Md. 1962), and read them to mean "all children" living in the Virgin Islands. I would engraft no exceptions in addition to those specifically expressed. Had the Legislature intended to exclude resident "non-immigrant" children it should have, and I think certainly would have, said so. Where, for example, in 17 V.I.C. 173, the Legislature formulated qualifications for participation in the Territorial Scholarship Fund, it had no hesitancy in restricting scholarship grants to "citizens of the United States" who are "bona fide residents of the Virgin Islands."[9] This very pointed exclusion of the alien non-immigrant from

---

[9] 17 V.I.C. § 173 is cited merely as an example of a clear expression of legislative intent without reference to the validity or invalidity of that section.

what must be considered a special benefit and privilege, strengthens the conclusion that the Legislature did not intend to exclude them from attendance at elementary and secondary schools.

██ I am of the opinion that 17 V.I.C. § 82, properly read and construed includes, rather than excludes, these plaintiffs among the children who must attend school. The construction advanced by defendants is unreasonable and unwarranted. Were I to so interpret the statute, and were it to be applied, I would be obliged to declare it invalid. That interpretation being far from compelled, I adopt the one which upholds the statute's validity.

██ ██ Regulation 103–1 of the Virgin Islands Board of Education is another matter, however. Not only is it in conflict with 17 V.I.C. § 82, but it also imposes unreasonable and invidious discrimination on these plaintiffs and all members of their class and thus offends the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States. I declare that regulation null and void and conclude that the plaintiffs' motion for summary judgment should be granted.