**GOVERNMENT OF THE VIRGIN ISLANDS**
**IN THE INTEREST OF K.O., Minor**

Family Division [No Number in Original]

Territorial Court of the Virgin Islands

Division of St. Thomas and St. John

October 25, 2004

DOUGLAS L. DICK, ESQUIRE, Assistant Attorney General, Department of Justice, St. Thomas, Virgin Islands, *Attorney for Plaintiff*.

STEPHEN A. BRUSCH, ESQUIRE, The Brusch Law Firm, St, Thomas, Virgin Islands, *Attorney for Defendant*.

KENDALL, *Family Court Judge*

## AMENDED MEMORANDUM AND OPINION

(October 25, 2004)

THIS MATTER came on for Special Hearing on October 19, 2004 regarding the minor's absence from school. The minor was present with his mother, and was represented by Assistant Territorial Public Defender, Julie Smith-Todman. The Government was represented by Assistant Attorney General Douglas Dick. The Court heard testimony from Dr. Sharon McCollum-Rogers, Principal of the Ivanna Eudora Kean High School, Mr. William Frett, Insular Superintendent of Schools for the St. Thomas and St. John District, the minor's mother, his aunt and the minor himself.

Based upon the record and for the reasons set forth below, the Court will Order the minor back to school and Order the Principal to comply with the Rules and Regulations of the Board of Education regarding disciplinary action and Due Process procedures.

## I. JURISDICTION

The jurisdiction of the Territorial Court is vested by Congress in Section 21(a) of the Revised Organic Act of 1954, as amended, and pursuant thereto, the Family Division of the Court, by virtue of 4 V.I.C. §§ 171 and 173, has jurisdiction over "all matters within [the] Division", including "any child ... until he becomes nineteen (19) years of age".

▪ The Government has contended that this Court has no jurisdiction over the minor's exclusion from school and that school officials have unbridled power in administering the schools. There is no merit to this contention where, as here, all Due Process procedures have been denied the minor by the Principal, where all administrative remedies have been foreclosed or exhausted by the parent and the minor, and where the minor is being irreparably harmed by the continuing delay in his attendance at school this school year.

Under such circumstances, a vacuum is created by the failure of the Executive Branch to vindicate the minor's rights. As protectors of the Constitution, Courts at times must fill that vacuum to ensure that the rights of the powerless are protected by compelling compliance with the Rules, the Law and the Constitution. *See, Brown v. Board of Education*, 347 U.S. 483, 74 S. Ct. 686, 98 L. Ed. 873 (1954).

In this case, this Court must immediately exercise its jurisdiction under the 14th Amendment to the U.S. Constitution (applicable to the Virgin Islands through Section 3 of the Revised Organic Act of 1954, as amended) and the laws of the Virgin Islands in order to put an end to the continuing constitutional violation of the minor's Due Process rights.

## II. BACKGROUND

During a juvenile matter, the Court was advised that the minor was not in school. Upon further inquiry, both the minor and his mother asserted that upon returning to school for his senior year, he was asked to leave the campus because his uniform pants were too long. After fixing the pants, he returned the next day but was told that his mother had to accompany him. Since his mother was unable to leave work, she asked her sister to accompany the minor but when they arrived, the minor and his aunt were told that his pants were still too long and they were pepper-sprayed by a monitor while being escorted off campus. The minor's mother also stated that she attempted to meet with the Principal, Insular Superintendent and the Commissioner of Education to ascertain why her son was prevented from attending school, all to no avail.

The Court could not accept what it was told about the minor's absence from school as factual, so it immediately scheduled the Special Hearing to get the other side of the story and determine whether the minor's exclusion was in compliance with the Rules and Regulations of the Board of Education, especially since time is of the essence during the school term.

## III. FINDINGS OF FACT

The Court finds that the minor was enrolled as a student at the Ivanna Eudora Kean High School at the beginning of the current school year. He had completed the 2003-2004 school year and was never notified that he would not be admitted the following year. He was permitted to attend orientation on September 7, 2004, although he was not allowed to

participate in the ritual because "his pants were too long." After shortening the pants, he returned the next day, but was told that he had to be accompanied by a parent. He returned that same day with his aunt because his mother was at work and unable to accompany him. At that time, the Principal said that the minor's pants were still too long and asked the monitor to accompany them off the campus. In so doing, both the minor and his aunt were pepper-sprayed by the monitor.

It appears that they were pepper-sprayed because they delayed too long in leaving the campus. The minor's mother testified that the Principal told her "any child who is not properly dressed will be pepper-sprayed". This testimony was not controverted by the Principal who, at the time of the testimony, was present in the Courtroom with Counsel, but offered no rebuttal thereto. The Court rejects the Principal's testimony that pepper-spray was used because the minor struck the monitor since she later testified that she did not see him strike the Monitor. Her testimony was therefore contradictory. Instead, the Court finds that any action by the minor came after he had been pepper-sprayed and was acting defensively, including the removal of his school shirt and undershirt which had been soaked by the pepper-spray. The use of such a dangerous weapon on an unarmed minor is not consistent with the Disciplinary Policies of the Board of Education.

The Court further finds that the minor is enrolled as a student at Eudora Kean High School and the Principal considered him a student of the school because: (1) the minor's class schedule was prepared but was not given to him because the school's Administration said it could not be found; (2) he received no notice that he would not be admitted for the new school year; (3) the minor's orientation date was approved and (4) the Principal made it clear that "when he is in proper uniform, I'll take him back".

The Court further finds that the only reason for the minor's exclusion from school was his alleged failure to wear the proper uniform and not because of any disruptive behavior by him at school or any other reason. The Court also finds that the other reasons posited by the Principal for his exclusion are pretextual and nothing more than belated attempts by her to find new reasons to justify her illegal exclusion of the minor from school in violation of her oath of office to obey the laws. Indeed, if those reasons were in fact valid, she would not have stated, "when he is in proper uniform, I'll take him back".

The Court further finds that the minor's initial presence in Court was directly attributable to his frustration at being denied his education for no apparent good reason. Had he not come to Court, the Territory, in all probability, would have never known of his illegal and prolonged exclusion from school.[1] When he came to Court, the minor had already been excluded from school for approximately two (2) months, a blatant violation of the Board of Education's Rules which limit suspension by a Principal to ten (10) days maximum. His mother testified that he repeatedly inquired of her why he was not in school and asked her what kind of mother she was if she could not do anything to get him back in school. It was evident to the Court that the minor's desire to complete his education was unquestionable.

The Court takes judicial notice that the minor was recognized by the United States Achievement Academy and listed as an American Scholar in the "2001 All-American Scholars Directory, Volume 43", in recognition of his excellent academic performance at the Addelita Cancryn Junior High School. According to Government's Exhibit No. 1, even though he appeared to be slipping in his school work at the end of the last school year, his academic performance was good enough to effectively warrant him making up the one-half (1/2) credit shortage during his twelfth grade.[2]

Based upon the Court's observation of the minor in Court, it is clear that he has some issues that need attention. His medical problem relative to his stomach was acknowledged. His reluctance to take the medication for his stomach was brought to the attention of the school counselor by his mother in her attempt to get assistance, and the counselor helped by referring her to Dr. Tom Tyne. While some counseling may be in order, Dr. Tyne made it clear that "he needs to be in school" and concluded by stating that "I do not notice any behavior or thinking problems from his comments or actions in my office that would suggest that he could not function at school". Indeed, during both proceedings the minor's intelligence was obvious and he was very coherent. Thus, it is clear that the minor should be returned to school.

---

[1]    The Court wonders how many other students have been similarly excluded from school.

[2]    According to his report card, the minor is 1/2 credit short of being promoted to the 12th grade.

According to the late Governor Ralph Paiewonsky, we should "never let the perfect be the enemy of the good". We should therefore not foreclose the minor from the opportunity of receiving his well deserved, regular high school diploma when he's so close to realizing that important milestone, especially where, as here, there is no medical expert to contradict Dr. Tyne's statement. Any student who is so "close to the finish line" and appears to be faltering should be offered a helping hand to get there rather than being summarily ejected from the race, especially when he has demonstrated superior performance throughout most of his academic career. The policy of the Board of Education is especially aimed at rescuing such faltering students and preventing them from dropping out of school. The Principal has failed to follow that policy.[3]

## IV. CONCLUSIONS OF LAW

The Court concludes that the minor's absence from school is a *de facto* expulsion and that such expulsion is not only a clear violation of the Rules and Regulations of the Board of Education governing student conduct and disciplinary action, but also a violation of fundamental Due Process guaranteed by the U.S. Constitution.

### A. Rules Regarding Minor Infractions

Section IV of the Rules of the Board of Education provides that:

> Disciplinary infractions and responses to them are divided into four levels. Each level represents progressively more serious infractions culminating in Level IV offenses.

The Rules further provide for "Level I Infractions and Disciplinary Responses" and state that:

> **Level I offenses are minor acts** of misconduct which interfere with the orderly operation of the classroom ... The misconduct should be handled first by the individual staff member involved. **When additional action becomes necessary because of continued violation** or **other serious concerns, the student will**

---

[3]     The Board of Education must be complimented for the comprehensive and practical procedures adopted to ensure that all schools comply with the Due Process requirements of the V.I. Organic Act and the U.S. Constitution. If the Principal had followed those procedures, this Court would not have had to invoke its Constitutional jurisdiction.

**then be referred to the school administrator/designee for disciplinary action.** (Emphasis added)

Included in Level I Infractions is "Dress Code" i.e. "Non-Conformity to established Dress Code".

It is clear that the minor's failure to attend school in "proper uniform" was a Level I Infraction. He was sent home for such an infraction and, according to the principal, "when he's in proper uniform, I'll take him back".

The "Disciplinary Responses for Level I Infractions" are as follows:

"Parental contact (required); counseling and direction; verbal reprimand; special work assignment; withdrawal of privileges; return of property; payment for same, or restitution for damages; detention (parental contact required); school/classroom positive/negative reinforcement plan; demerits; warning of referral to Level II.

■ Instead of applying one of the Disciplinary Responses to the minor's failure to wear the proper uniform, the Principal ignored this Board of Education's Rule and put the minor off campus. Because such action is not included as a "Disciplinary Response", the Principal clearly violated the Board's Rules and Regulations.

Once being put off campus, the minor was never permitted to return to school. Despite his mother's numerous attempts to secure his class schedule by first meeting with the Principal and subsequently attempting to meet with the Superintendent of Schools and the Commissioner of Education, all to no avail, the minor was refused the schedule and thereby prevented from attending classes. At no time was he or his mother notified that he would not be permitted to attend classes because of any alleged disruptive behavior, drug use, etc. Nor was he ever accorded any hearing with respect to any alleged infractions.

Clearly, the minor was denied his Due Process Rights mandated by the Board of Education and he has exhausted all administrative remedies regarding his attendance at school based upon his mother's futile attempts to do so. The Court therefore had every right to exercise its jurisdiction in this matter since the minor is suffering a *de facto* expulsion from school for a trivial uniform violation.

## B. Rules Regarding Suspension and Expulsion

To the extent the minor's initial removal from school could be deemed a suspension, his suspension was also in clear violation of the Board's Rules and Regulations.

Suspension from school from 1-10 days is a Disciplinary Response to a Level III Infraction. "Level III Infractions are major acts of misconduct. They include, but are not limited to, repeated acts of misconduct, serious disruptions of the orderly conduct of the school, threats to the health, safety, and property of self or others and acts of serious misconduct". Level III Infractions include assault/battery (fighting), breaking and entering, destruction of property/vandalism, extortion/threats, alcohol/drug use, etc.

The procedures for suspension are set forth in Section V of the Board of Education's Rules and Regulations and are mandatory. There are four (4) kinds of suspension, *viz.,* (1) suspension requiring a parent conference; (2) suspension for a few days (one to five) within the school; (3) suspension which requires the student to be away from the school premises from one to five days and (4) suspension for one to ten days. The Rules further provide that **"Administrators are encouraged to use more in-school suspensions in preference to out of school suspensions"**. Additionally, it is provided that **"the maximum suspension is ten (10) school days without requiring the Commissioner of Education's approval"**. (Emphasis added)

The testimony is clear that the minor did not commit and was not excluded from school for any Level III Infraction. Nor was he suspended in accordance with any of the four (4) listed types of suspensions. Here again, the Principal violated the Board of Education's Rules.

Moreover, in reviewing the "Due Process For Suspensions Of Ten (10) Days or Less", Provision of the Rules, none of the eight (8) listed procedural steps were complied with by the Principal. She seems to do whatever she wants, with no regard for the rules or the minor's Due Process Rights.

Since the minor has been excluded for almost two (2) months, his absence constitutes a *de facto* expulsion. Expulsion is response to a Level IV Infraction and is more severe than a suspension.

A review of the Board of Education Rules regarding "Due Process Procedures for Suspension in Excess of Ten (10) Days or Expulsion,"

also reveals that none of the nine (9) listed procedural steps were complied with by the Principal relative to the minor. As such, even the minor's *de facto* expulsion was also contrary to law and constitutes another violation of the rules by the Principal.[4]

## C. Constitutional Violation

■ In addition to her failure to comply with the Due Process requirements of the Board of Education's Rules, the Principal has also violated the Due Process requirements of the V.I. Organic Act and the U.S. Constitution.

In *Goss v. Lopez*, 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975), the U.S. Supreme Court noted that young people do not shed their Constitutional rights at the schoolhouse door. *Id.* at 574, citing *Tinker v. Desmoines Independent Community School District*, 393 U.S. 503, 506, 39 S. Ct. 733, 21 L. Ed. 2d 731 (1969). Continuing, the Court noted that:

> "Judicial interposition in the operation of the public school system of the nation raises problems requiring care and restraint ... By and large, public education in our nation is committed to the control of state and local authorities".

*Id.* at 577, *citing Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S. Ct. 266, 270, 21 L. Ed. 2d 228 (1968).

While recognizing the Territory's public education is committed to the control of its local officials as stated above,

---

[4] The Court takes no pleasure in making these findings because the Principal has, from all reports, done an outstanding job in "turning around" the Ivanna Eudora Kean High School. This Court is especially proud of her accomplishments because her "no nonsense" manner seems to be "just what the doctor ordered" for that school. However, doing a good job does not give her the right to violate the law. It is indeed ironic that the Principal would undermine her outstanding accomplishments by triggering the disruption of the entire student body at a time when obtaining accreditation is imminent. By publicly defying the Court's Order and the Appellate process, she is the one jeopardizing the accreditation, not the minor. Moreover, as one charged with the responsibility of teaching young, impressionable minds the importance of obeying the law and rules and regulations which are the *sine qua non* of any ordered society, the Principal's demagogic conduct could only foster disrespect for the law, thereby contributing to the further breakdown of law and order in the Territory.

The authority possessed by the [Territory] to prescribe and enforce standards of conduct in its schools, although concededly very broad, **must be exercised consistently with constitutional safeguards. Among other things, the [Territory] is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the due process clause and which may not be taken away for misconduct without adherence to the minimum procedures required by the clause.** (Emphasis added)

*Id.* at 575.

Clearly, while the Territory's and, *ergo,* the Principal's authority to enforce standards of conduct is very broad, it is not unfettered. Moreover, it is clear that by virtue of his *de facto* expulsion, the minor's entitlement to a public education has been taken away without adherence to the minimum procedures required by the Due Process Clause of the 14th Amendment to the U.S. Constitution. The gross violation of that clause by the Principal and others is an affront to basic notions of decency and justice in an ordered society and cannot be countenanced by this Court.

Additionally, it is to be noted that:

The Due Process Clause also forbids arbitrary deprivations of liberty. 'Where a person's good name, reputation, honor or integrity is at stake because of what the Government is doing to him', the minimal requirements of the Clause must be satisfied.

*Id.* at 574, citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S. Ct. 507, 510, 27 L. Ed. 2d 515 (1971).

During the hearing, the Principal testified about the minor's alleged disruptive behavior etc, thereby placing in jeopardy his "good name, reputation, honor and integrity".

**If sustained and recorded, these charges could seriously damage the [minor's] standing with [his] fellow pupils and [his] teachers as well as interfere with later opportunities for higher education and employment. It is apparent that the claimed right of the [Territory] to determine unilaterally and without process whether the misconduct has occurred immediately**

**collides with the requirements of the constitution.** (Emphasis added)

*Id.* at 575.

Since no misconduct charges were made against the minor when he was put off campus by the Principal on September 8, 2004 for being out of uniform, such belated charges are deemed to be pretextual as the Principal's attempt to defend her constitutional violation. Her "claimed right" to belatedly and unilaterally use such charges to justify her illegal conduct in expelling the minor "immediately collides with the requirements of the Constitution". Thus, such belated and unsubstantiated charges "could seriously damage the minor's good name and reputation". Constitutional Due Process forbids such arbitrary deprivations of the minor's liberty which could "interfere with later opportunities for higher education and employment".

It is indisputable that the minor has a right to public education. *See, Hosier v. Evans*, 314 F. Supp. 316, 8 V.I. 27, 34 (D.C. V.I. 1970) citing *Brown v. Board of Education*, 347 U.S. 483, 492, 74 S. Ct. 686, 690, 98 L. Ed. 873 (1954). This right, as noted heretofore, is a protected property interest within meaning of the Due Process Clause of the 14th Amendment to the U.S. Constitution. *Goss v. Lopez, supra.* "Parties whose rights are to be affected are entitled to be heard: and in order that they may enjoy that right, they must first be notified". *Id.* at 579, citing *Baldwin v. Hale*, 68 U.S. 223, 1 Wall. 223, 233, 17 L. Ed. 531 (1864).

As noted by the Court in *Goss v. Lopez,*

> We do not believe that school authorities must be totally free from notice and hearing requirements if their school's are to operate with acceptable efficiency. Students facing temporary suspension have interests qualifying for protection of the Due Process Clause.

*Id.* at 580-581.

Clearly, if a student facing temporary suspension has an interest which qualifies for Due Process Protection, then the minor in this case, who has been *de facto* expelled, certainly has a greater interest in such protection and his interest must be vindicated.[5]

---

[5] The Court takes judicial notice of the actions of the Principal after the issuance of the oral Order in this matter. Specifically, the Principal publicly expressed her contempt for the Court's Order, refused to report to school to comply with the Order, and

## ORDER

Based upon the foregoing, the Court concludes that the Principal violated the applicable procedures of the Board of Education in this matter. The Court also concludes that the minor was deprived of his right to Due Process under the Due Process Clause of the 14th Amendment to the U.S. Constitution and pursuant to the Rules and Regulations of the Board of Education. Accordingly, it is hereby

ORDERED, that the Principal and the school's administration shall immediately implement the minor's class schedule and his classroom assignment and shall make all necessary arrangements for the minor to make up all missed classes, and it is further

ORDERED, that the minor shall immediately return to the Eudora Kean High School and shall comply with all Rules and Regulations, including the school's dress code, and it is further

ORDERED, that the Principal and the school's administration shall comply with the Rules and Regulation of the Board of Education, and it is further

ORDERED, that the Department of Human Services, in coordination with the Principal and the school's administration, shall provide the minor with such assistance and counseling as is deemed necessary, and it is further

ORDERED, that the Principal and the school's administration shall take all necessary measures to protect the minor from harassment, intimidation, unnecessary interference and hardship in completing his studies at the school in light of the notoriety of the case.

---

contributed to a three (3) day closure of the school by misrepresenting the facts, the law and the Order. The Principal is hereby urged to comply with the Order in order to avoid any further judicial action.

**ANALYSIS**

It is clear that Dr. McCollum-Rogers failed to follow the rules of the Board of Education and, in doing so, violated the student's constitutional right to Procedural Due Process.[6] Entitlement to a public education has long been recognized as a fundamental property interest. *Goss v. Lopez*, 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975). In *Goss*, the Supreme Court held:

> "The authority possessed by the state to prescribe and enforce standards of conduct in its schools, although concededly very broad, must be exercised consistently with constitutional safe-guards. Among other things, the state is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the due process clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that clause." *Id.* at 574-75.

The Court in *Goss* noted that at a minimum, the words of the Due Process Clause required that the deprivation of life, liberty or property by adjudication must be preceded by notice and the opportunity to be heard. *Id.* at 579 (citing *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). The Court goes on to declare that "[t]he student's interest is to avoid unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences." *Id.* at 579. Thus, it is clearly established that the minor had a Constitutional right to a public education.

Due process for a ten (10) day suspension requires that the school give the student both notice of the charges against him and an opportunity to be heard. *Goss, supra*, at 579, 95 S. Ct. at 738. A hearing should be "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges ... are true and support the proposed action." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 545-546, 105 S. Ct. 1487, 1495, 84 L. Ed. 2d 494 (1985); *see also Bell v. Burson*, 402 U.S. 535, 542, 91 S. Ct. 1586, 1591, 29 L. Ed. 2d 90 (1971) ("It is a proposition which hardly seems to

---

[6] The Due Process Clause of the Fourteenth Amendment of the United States Constitution states in pertinent part: "No State shall ... deprive any person of life, liberty, or property without due process of the law."

need explication that a hearing which excludes consideration of an element essential to the decision" would not be a meaningful hearing.). Dr. McCollum-Rogers never held a presuspension hearing and never gave the minor an opportunity to be heard.

The Territory created the minor's property interest in education since it provides minors of his age the benefit of public education and he is entitled to equal protection of the laws under the Fourteenth amendment. *Goss, supra* ("Protected interests in property are normally 'not created by the Constitution. Rather they are created and their dimensions are defined' by an independent source such as state statutes or rules entitling the citizen to certain benefits.") The minor's liberty interest was impinged upon due to the damaging effect the allegations lodged against him could have with his standing with fellow students, his teachers, the pursuit of higher education and employment opportunities. *Id.* at 575. Here, the minor was not afforded his rights before being deprived of his property interest in education and his liberty interest in having a good name and reputation.

Based upon the testimony the Court finds that notwithstanding the Plaintiff's testimony the minor was not in school because he was erroneously turned away, repeatedly, for an alleged dress code violation. The Rules and Regulations of the Board of Education are clear. "Disciplinary infractions and the responses to them are divided into four levels. Each level represents progressively more serious infractions culminating in Level IV offenses." Nonconformity to the established dress code is listed as a Level I infraction and described as a minor act of misconduct and is punishable by, *inter alia,* a verbal reprimand. Not being allowed to attend school for such an extended period of time was tantamount to expulsion. The minor was, in effect, expelled from school for a dress code violation. The Court notes that the Rules and Regulations go on to state that "[p]utting children out of classes or suspending students for trivial matters is not a solution to the behavioral problem."

Expulsion from school is first listed in the Rules and Regulations of the Board of Education as an appropriate option for a Level IV infraction described as a major act of misconduct of the most serious category. Such infractions include, *inter alia,* arson and the possession of a weapon. In the event that it is applicable, the Board of Education has set forth a nine step Procedure of Due Process to effectuate expulsion. The

first step requires that "[t]he student must be told by the Administrator or designee of the reason(s) for consideration of suspension or expulsion." The second step is that "the student must be given the opportunity to present his/her side of the matter either verbally or in writing and must have the opportunity to present witnesses to the incident." This procedure is consistent with the minimum requirements of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. The minor in the instant matter was not notified of the consideration of his expulsion nor was he given the opportunity to present his side.

Dr. Sharon Ann McCollum-Rogers was not in compliance with the applicable procedures of the Board of Education in this matter. The Court also finds the minor was deprived of his rights of Due Process under the Due Process Clause of the Fourteenth Amendment of the Constitution and pursuant to the Rules and Regulations of the Board of Education. Based upon the foregoing, and the Government's inability to show cause for the expulsion of the minor, it is hereby,

ORDERED, that the minor, Mr. Keegan O'Brien shall be released into the custody of Ms. Colette Angol, his mother, subject to the following conditions:

1. The minor shall obey the rules and regulations of his mother's home;
2. The minor shall obey the rules and regulations of his school;
3. The minor shall observe a 6:00 p.m. to 6:00 a.m. curfew unless accompanied by his mother or another authorized adult:
4. The minor shall not violate any laws of the Virgin Islands or the United States, and it is further

ORDERED, that in light of the Due Process violation the minor is ordered back to Ivanna Eudora Kean High School starting Monday, October 25, 2004, in order for the Administration to comply with the Rules and Regulations of the Board of Education should they seek to expell the minor. While expulsion proceedings are commenced, the minor should be allowed to attend classes regularly in as much as he is presumed innocent. The Administration should make a good faith effort to assist him in receiving the necessary curriculum and class work for the first marking period, assist him in making up the one-half credit in

91

physical education needed to promote him to the twelfth grade, and allow him to remain on campus without unnecessary hardship, and it is further

ORDERED, that the Department of Human Services shall provide the minor with the necessary medical assistance and counseling, and it is further,

ORDERED, that the Territorial Court Marshal shall serve a copy of this Order upon the minor, Mr. Keegan O'Brien, Ms. Colette Angol, his mother, Dr. Noreen Michael, Commissioner of Education, Mr. William I. Frett, Superintendent of Education, and Ms. Sharon McCollum-Rogers, Principal of Ivanna Eudora Kean High School personally with copies directed to: Attorneys Douglas L. Dick and Julie Smith-Todman.