344 S.E.2d 633

**Marvin WHITE, a minor, by his next friend, Debrah WHITE**

v.

**Jerry LINKINOGGOR, etc., et al.**

**No. 17046.**

Supreme Court of Appeals of West Virginia.

June 4, 1986.

---

David B. McMahon, Legal Aid Society, Charleston, for appellant.

Richard Facemire, P.A., Clay, for appellees.

McGRAW, Justice:

This mandamus proceeding arose after the petitioner, sixteen year-old Marvin

White, was refused admittance to Clay County High School on February 5, 1986. The respondents are Jerry Linkinoggor, principal of that school, James Dawson, Clay County Superintendent of Schools, and the members of the Clay County Board of Education. Based upon the following conclusions, we grant the writ.

Marvin White, the petitioner, attended elementary and junior high school in Clay County. His family moved to Calhoun County prior to his entry into high school. Marvin then began attending Calhoun County High School. The petition herein alleges that a number of incidents occurred where the one or both of the petitioner's parents threatened violence against or otherwise mistreated him. He left home on Sunday, February 4, 1986. At that time, he hitch-hiked and walked to the home of his brother and sister-in-law, Floyd and Debrah White, in Clay County. The following day, Debrah White took Marvin to Clay County High School to enroll him, and met with the principal of that school, the respondent Jerry Linkinoggor. The respondent principal told the petitioner and his sister-in-law that he could not be enrolled in school in Clay County until he furnished his health immunization records, his general school records, and a document evidencing that Debrah White was authorized to act as his guardian. A second request for admittance, after the petitioner and his sister-in-law consulted with a lawyer, resulted similarly. On this same date, the petitioner and his sister-in-law also went to the Department of Human Services and met with an employee of the Child Protective Services Division. It does not appear, however, that parental abuse and neglect proceedings were ever instituted.

On February 7, 1986, the petitioner, by his next friend, appeared before the Circuit Court of Clay County and petitioned the court for a writ of mandamus, and for a temporary injunction, both aimed at getting the petitioner promptly enrolled in Clay County High School. Without reaching the ultimate issue of the petitioner's right to admittance, the circuit court ruled that it would not entertain the action unless and until the petitioner's next friend, Debrah White, obtained legal custody of the petitioner.

On February 13, 1986, the petitioner, by his same next friend, sought relief by similar petitions filed with this Court. On the same date, we issued a rule to show cause, on the mandamus petition returnable March 4, 1986, and awarded a temporary injunction pending final determination in the mandamus proceeding. Subsequently, by supplemental petition, counsel for the petitioner informed this Court that the petitioner has returned to his parents' home in Calhoun County and is again attending school there. However, citing circumstances indicating a likelihood of recurrence of this issue in the instant case, as well as other instances of similar refusals to admit students into the Clay County school system,[1] counsel for the petitioner urges that we address the question as presented in the initial petition. The question undisputably involves a most vital public function—education of our youth. Because it is foreseeable that it will arise again, we find the question remains justiciable for future guidance. *See State ex rel. McGraw v. Willis*, 174 W.Va. 118, 323 S.E.2d 600 (1984); *State ex rel. M.C.H. v. Kinder*, 173 W.Va. 387, 317 S.E.2d 150 (1984); *State ex rel. White v. Narick*, 170 W.Va. 195, 292 S.E.2d 54 (1982); *Rissler v. Giardina*, 169 W.Va. 558, 289 S.E.2d 180 (1982).

The right of access to public schools touches upon both constitutional and statutory guaranties. Under West Virginia Constitution article XII, § 1, edu-

---

**1.** The petitioner's counsel cites two other instances, also apparently now moot. The first concerns two girls whose legal custody was vested in their mother. The mother lived in another county. For a time, they were living with their father in Clay County. According to counsel, the respondents refused to admit those children to school because the mother refused to release their prior school records from a private Christian school. A second instance, acknowledged by the respondents herein, involved a student who asked to be admitted to the schools of Clay County in late November of 1985, but was refused admission until the following January due to lack of medical and academic records.

cation is "a fundamental, constitutional right in this State." Syl. pt. 3, *Pauley v. Kelley,* 162 W.Va. 672, 255 S.E.2d 859 (1979). By statute it is mandated that, "The public schools shall be open for the full instructional term to all persons who have attained the entrance age ... Provided, that persons over the age of twenty-one may enter only those programs or classes authorized...." West Virginia Code § 18–5–15 (1984 Replacement Vol.); *see also* West Virginia Code §§ 18–20–1 & 18–20–1a (1984 Replacement Vol. & Supp.1985). Additionally, the statutory requirement that all children attend school between the ages of six and sixteen manifests the long established public policy that every citizen should possess the skills provided by a basic education. *See* West Virginia Code § 18–8–1 *et seq.* (1984 Replacement Vol.). The petitioner, who is sixteen years old, is clearly within the class of persons entitled to the benefits of public education. Given his age, he is no longer subject to the compulsory school attendance provisions. Yet, by promptly presenting himself for enrollment in Clay County High School he demonstrated his genuine desire to continue, without missing a day, his high school education. His reward for such diligence during a period of family strife was to be summarily refused admittance.

In essence, the petitioner was given three reasons why he could not be admitted to Clay County High School—failure to present (1) inoculation records, (2) academic records, and (3) guardian papers. Although we shall address all three, the first two reasons warrant little discussion. It is reasonably apparent from the record that the central area of dispute in this case involves the guardianship issue.

■ West Virginia Code § 16–3–4 (Supp. 1985), generally requires that all school children be immunized against specified communicable diseases. The petitioner concedes that when he presented himself to the principal of Clay County High School he did not have his immunization records in hand. However, this omission did not warrant refusal to provisionally admit the petitioner. The above-cited statutory provision requires immunization for "[a]ll children entering school for the first time in this state ..." Marvin White had, prior to moving to Calhoun County with his parents, attended Clay County schools for his elementary and junior high education. Since the requirement of this statute existed long before the petitioner first entered elementary school, the respondent principal could have relied, at least temporarily, upon the presumption that the law had been followed. In any event, if he had any doubt it would have been easy enough to telephone or write the Calhoun County High School to double check.

■ We find the respondents' second reason for excluding the petitioner from school even more devoid of merit than the first. The respondent principal told the petitioner that he must present his academic records from his former school before he could be admitted. There is no statutory authority for this asserted requirement. The respondents' brief defense in support of this point is that a student "must provide sufficient information to allow the school to obtain academic records in order to determine the student's level of academic performance." Our equally brief conclusion in this instance is—he did. The respondent principal was informed of where the petitioner had been attending school. Placing him in school for a brief period while his academic records were sent over from a neighboring county is not out of order. In essence, the petitioner was told that until the school knew exactly what level to place him in, they would not place him anywhere.[2]

Schools exist for the benefit of the children. There is no legal basis for depriving them of valuable time in school due to a temporary lack of academic records.

**2.** As a practical matter, since such records are subject to alteration, school systems should not (and probably do not) have a general policy of having the student, as opposed to the former school system, handle the physical transfer of these documents. In fact, federal law contemplates such system-to-system cooperation. *See* 20 U.S.C. § 1232g(b)(1)(B) (1982).

The right to refuse to enroll the petitioner is most vigorously defended upon the third reason given, that is, absence of proof of lawful custody or guardianship. The respondents do acknowledge that it is not a requirement that a child be legally domiciled in the place were a school is located in order to attend that school. *See* Syl. pt. 3, *Grand Lodge I.O.O.F. v. Board of Education*, 90 W.Va. 8, 111 S.E. 309 (1922). The respondents further admit that all children in the State have the right to attend public school in the district in which they live, even if only temporary residents of the district. *See* Syl. pts. 4 & 5, *Grand Lodge I.O.O.F. v. Board of Education, supra.* The respondents maintain, however, that a child wishing to attend a particular school must live with someone in the district or county who possesses legally established custodial or guardianship rights over the child.

The respondents cite no statutory authority for their position. To the contrary, it is apparent that under West Virginia Constitution article XII, § 1 and West Virginia Code § 18–5–15 (1984 Replacement Vol.), the public schools of this State are presumptively open to all persons of proper age. Beyond the inoculation provision previously discussed, the only two grounds legally sufficient to override this presumption are embodied in West Virginia Code § 18A–5–1 (1984 Replacement Vol.). First, under this section, any student "known to have or suspected of having any infectious disease" may be temporarily suspended from school. Second, this statute provides that any student "guilty of disorderly, refractory, indecent or immoral conduct" can be temporarily suspended, and, upon a finding by the local board of education that such student's conduct is "detrimental to the progress and the general conduct of the school," expulsion is authorized.[3] The petitioner's case clearly does not fall within these specified conditions, and the respondents do not otherwise contend that this statute authorizes the principal's refusal to enroll the petitioner. Our conclusion in a similar case is applicable: "This statute only gives the board of education power to expel or exclude from school those children who have been previously admitted. *There is no authority for school boards to refuse admittance to children to attend public schools within the age requirements provided by statute.*" *State ex rel. Doe v. Kingery*, 157 W.Va. 667, 673, 203 S.E.2d 358, 361 (1974) (emphasis added).

In *State ex rel. Doe v. Kingery*, a sixteen year-old girl, who had formerly been attending Kanawha County schools, was temporarily placed in the youth hall of Spencer State Hospital in Roane County by the juvenile court until a foster home could be found. After she was refused admittance into Spencer High School, mandamus relief was sought from this Court. We determined that "the petitioner should have been admitted to Spencer High School when she presented herself to the principal for admittance, which is clearly mandated under the Constitution of West Virginia, statutes of the State and decisions of this Court." 157 W.Va. at 673, 203 S.E.2d at 361.

The conclusion mandated in *Kingery* is controlling here. We acknowledge that the custody situation in *Kingery* differed from the present case in that there was a court order in the former case admitting the girl to Spencer State Hospital, thereby giving the hospital certain legal rights and responsibilities concerning the child. However, a child's fundamental constitutional right to education cannot be denied due to a sudden change of circumstances that causes their custodial situation to be in a state of confusion or flux. It is a tragic fact of modern life that all too often children find themselves caught up in transient situations caused by the break-up of a marriage, parental abuse or neglect, or some other familial upheaval. As a practical matter, the schools should not exacerbate any custodial dispute that may exist during these times. In the instant case, at

---

3. Certain due process protections are required prior to such disciplinary exclusions. *See* West Virginia Code § 18A–5–1a (1984 Replacement Vol.); *see also Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

the time the petitioner sought admission to Clay County High School he and the relatives who had taken him in were in contact with an attorney and with the Child Protective Services Division of the Department of Human Services. It is not indicated in the record whether the parents were even seeking his return. The respondent principal had no authority to, in effect, condition the petitioner's continued education upon his returning to a possibly abusive situation in Calhoun County. Rather, the respondent school system should have provisionally admitted him until proper proceedings were completed to accomplish a legal change of custody, establish guardianship rights, or as it turned out, the situation was otherwise resolved.

■ The respondents voice concern over their need to be able to look to some legally responsible person in the event a child is injured or some other problem arises. We note that the compulsory school attendance law provides that enforcement and prosecution may be sought against any person who has a child "in his legal *or actual charge*...." West Virginia Code § 18–8–2 (1984 Replacement Vol.). Conversely, as long as the school receives acknowledgement from the person in "actual charge" of the child that such person is assuming responsibility, temporarily or otherwise, for the housing, care and supervision of the child, the school's responsibility is fulfilled. Beyond that, any legal custody questions are for the child welfare agencies and the courts.

Accordingly, we order that the respondents conduct all future student admissions in conformance with this opinion.

Writ granted.