640 S.E.2d 569

**KATHERINE B. T., Petitioner Below, Appellant,**

**v.**

**Sally G. JACKSON, Judge of the Family Court of Jefferson County, West Virginia; and Richard B., Respondents Below, Appellees.**

No. 33005.

Supreme Court of Appeals of West Virginia.

Submitted: Oct. 4, 2006.

Decided: Nov. 30, 2006.

Dissenting Opinion of Justice Maynard Dec. 4, 2006.

Nancy A. Dalby, Esq., Charles Town, for Appellant.

Robert D. Aitcheson, Esq., Charles Town, for Appellee Richard B.

STARCHER, J.

Appellant appeals from an order entered by the circuit court of Jefferson County denying her petition for a writ of prohibition. The appellant claims in her petition that a family court judge exceeded the jurisdiction of the family court by issuing a domestic violence protective order upon a petition filed by a minor. For the reasons set forth below, we affirm the dismissal of appellant's petition.

I.

*Facts & Background*

In the early morning hours of December 31, 2004, Richard B.[1] filed a domestic violence petition against his mother, Katherine

---

1. We follow our traditional practice in cases involving sensitive facts and use initials to identify the last names of the parties. *See In re Jeffrey R. L.,* 190 W.Va. 24, 435 S.E.2d 162 (1993).

B. T., in the magistrate court of Jefferson County, West Virginia. In the petition Richard B. claims that in the late hours of December 30, 2004, in Charles Town, West Virginia, "My mom provoked me and came after me and choked me. She also punched me in the face."

At the time of the filing of the petition Richard B. was a minor—fifteen years old. Also, at the time of the filing of the petition Richard B. was accompanied by his sister, Jennifer M., a twenty-seven year old married woman who is the mother of two children. Jennifer M., however, was not named in the petition as next friend.

After reviewing the petition, the magistrate entered an emergency protective order and placed Richard B. in the custody of his sister, Jennifer M., who lived in nearby Maryland.[2] Subsequent to the hearing, the magistrate by telephone and by FAX reported the incident to the Department of Health and Human Resources ("the DHHR").[3]

On January 11, 2005, the family court of Jefferson County, West Virginia, conducted a final hearing on the petition. At the beginning of the hearing the court recognized the petitioner's sister, Jennifer M., as next friend and treated her as such by allowing her to remain in the hearing as a party while other witnesses were segregated. The minor petitioner was represented by counsel, Robert D. Aitcheson, and the respondent Katherine B.T. (petitioner on appeal) appeared *pro se.*

After hearing evidence from both the minor son and the respondent mother, the family court issued a 180–day protective order[4] and granted temporary custody to Richard B.'s sister, Jennifer M. The family court judge then, at the request of Jennifer M., granted permission to place Richard B. in the physical custody of Randall W., a family friend, who also was present and who testified at the hearing.[5] Randall W. is also a resident of Maryland.

On January 13, 2005, the respondent mother appealed the order of the family court to the circuit court, claiming that false statements were made against her by her son and daughter. The circuit court conducted a hearing on the appeal on January 25, 2005, and reviewed the record of the family court.

---

**2.** The magistrate made findings which included the following:

> . . .
> C. Petitioner has proven the allegations of domestic violence or abuse by clear and convincing evidence of immediate and present danger of abuse, and is entitled to mandatory relief as provided by W.Va.Code § 48–27–502.
> D. (Initial if applicable) *mpr* That Petitioner has proven by clear and convincing evidence the need for the permissive relief granted in this ORDER as provided by W.Va.Code § 48–27–503.
> The court makes the following findings of fact which support the conclusion stated in section C & D:
> Petr's [Petitioner's] sworn statement; physical evidence of abuse [;] Statements & information from sister ie [sic]: history of violence between mother and children
>
> . . .
> *PERMISSIVE RELIEF*
> . . .
> 12. *mpr* OTHER as allowed by W.Va.Code § 48–27–403: Petr [Petitioner] is going to stay w/ his sister, Jennifer M[.] (27 yr. Old) in Burnie, MD
> . . .

**3.** The record reflects that the following was sent by FAX to the Department of Health and Human Resources:

> December 31, 2004
> Jefferson County DHHR Office
> BY FAX: 267–0121
> Attached for your information is a copy of a Domestic Violence
> Petition and Emergency Protective Order that was issued about 2:30 a.m. today
> I called the Hotline to report the incident. I spoke with Terry and told her I woul fax this paperwork to you Hope it helps.
> Thank you.
> *[signature]*
> Mary Paul Rissler, Magistrate
> Jefferson County
> cc: Family Ct. Judge

**4.** The order by its terms expired on July 10, 2005.

**5.** Paragraph 5 of the order granting custody states:

> PERMISSIVE RELIEF:
> The following items initialed by the family law master [family court judge] are further ORDERED:
> . . .
> 5. ✓ Temporary custody of (*list names of children, if any*) Richard [B.] is awarded to (check one if granted) ☐ Petitioner ☐ Respondent. his sister Jennifer [M.]. She may place him with Randall [W.], a family friend.

The circuit court affirmed the family court's protective order on January 25, 2005. The respondent mother, Katherine B. T., immediately filed a petition in the family court to modify the protective order. No specific relief was requested in the petition.

On February 3, 2005, the minor son, Richard B., by counsel filed a petition for contempt against his mother, Katherine B. T., alleging that his mother violated the protective order by making excessive phone calls to him. On February 8, 2005, the respondent mother, Katherine B. T., filed a second petition in the family court to modify the protective order, this time seeking visitation with Richard B. On the same day, the family court considered the son's petition for contempt, and found the respondent mother, Katherine B. T., in contempt. The family court also considered the mother's motion to modify the protective order, and issued a modified protective order which permitted the petitioner, Richard B., to spend time with his mother, Katherine B. T., as "he [Richard B.] desires."

On March 9, 2005, the respondent mother, Katherine B. T., for the first time, appeared by counsel, by filing a motion in the family court to dismiss the original petition, or in the alternative, that the court enter an order placing the custody of Richard B. with an appropriate adult in West Virginia. On April 11, 2005, Richard B. filed a motion for drug testing of his mother, Katherine B.T. By order dated April 12, 2005, the family court denied the mother's motion to dismiss and the son's motion for drug testing.

On April 13, 2005, Katherine B. T., the respondent below and appellant in the instant case, filed a petition for a writ of prohibition in the circuit court against Sally G. Jackson, Judge of the Family Court, claiming, among other things, that the family court exceeded its legitimate powers by granting relief to the minor, Richard B., in the underlying case. The circuit court considered the petition for a writ of prohibition at a hearing on June 29, 2005, and entered an order denying the petition. It is from this order that the petitioner, Katherine B. T., appeals.

II.

*Standard of Review*

■ We first turn our attention to the standard of review to be applied in the instant case. We held in Syllabus point 2 of *State ex rel. Peacher v. Sencindiver,* 160 W.Va. 314, 233 S.E.2d 425 (1977) that:

A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W.Va.Code,* 53–1–1.

■ Furthermore, we held in Syllabus Point 4 of *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996) that:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

■ Finally, we held in Syllabus Point 1 of *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995) that:

Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.

We consider these principles applicable to the instant case.

## III.

### Discussion

■ We begin our discussion by noting that since the protective order in the underlying domestic violence case expired by its own terms and by operation of law[6] on July 10, 2005, it would appear that the instant case is moot. The petition for appeal was received by this Court on October 31, 2005, nearly three months after the expiration of the underlying domestic violence protective order issued by the family court.

Complicating our consideration of the instant case is the fact that in oral argument we learned that on July 7, 2005, three days before the expiration of the underlying domestic violence protective order, Richard B., by his next friend, Randall W., filed a new and separate petition in the family court of Jefferson County against the minor's mother, Katherine B. T., requesting that emergency and permanent custody be placed in Randall W. We further learned that on July 8, 2005, the family court entered an order granting emergency temporary custody to Randall W. until further order of the court.[7] This order was in effect at the time of the oral argument in the instant case.

We have also learned since oral argument, and take judicial notice thereof, that a final hearing was conducted in the aforesaid pending custody case in the family court of Jefferson County on June 13, 2006. At the hearing the parties reported to the family court that the parties had reached an agreed settlement regarding the custody of Richard B. Addi-

tionally, we note that a guardian *ad litem* had been appointed for Richard B. in the custody case and that the guardian *ad litem* participated in the June 13 hearing.

The agreed settlement announced by the parties to the court at the June 13, 2006 custody hearing was reduced to writing and incorporated into a final order[8] which, in part, granted shared custody to Randall W. and Katherine B.T. The order also provides that Katherine B.T. shall have custodial time with Richard B. for a minimum of three days per week, or as she and the child otherwise agree. The order of the family court was entered on October 16, 2006, after the oral argument in the instant case.

■ The appellant encourages this Court to consider the issues in this case notwithstanding that the domestic violence order in issue has expired. Appellant cites to Syllabus Point 1 of *Israel by Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989) for the proposition that this Court may consider issues that are technically moot.

Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and

---

6. *See W.Va.Code*, 48–27–505(a) (2001) which limits protective orders to 180 days.

7. We take judicial notice of a July 8, 2005, order in Jefferson County Civil Action No. 05–D–210, in which custody of Richard B. was granted to Randall W. after the court concluded that Randall W. was fit to have custody.

In the July 8, 2005, order the family court stated:

This Court has previously found that ... C. Randall [W.] is fit to have custody of the child ....

8. We take judicial notice of the June 13, 2006 hearing order in Jefferson County Civil Action

No. 05–D–210 in which the agreement of the parties was memorialized. The order was entered on October 16, 2006. The following is a portion of the order:

1. Randall [W.] and Katherine [B.T.] shall have shared custody of Richard [B.], who shall live primarily with Randall [W.] in Hagerstown, Maryland.

2. Katherine [B. T.]. shall have custodial time with the minor child for a minimum of three days per week or as she & child otherwise agree. Child is over 14 yrs & has the right to determine a custodial schedule.

determinate nature, may appropriately be decided.

Syllabus Point 1 of *Israel, supra.*

In examining whether the instant case satisfies the three factors of *Israel, supra,* we first consider potential collateral consequences. If minor children were allowed to file domestic violence petitions without the necessity of doing so by a next friend or having a guardian *ad litem* appointed, it would be reasonable to expect to some children to use the domestic violence laws to escape legitimate parental supervision. We believe this potentiality alone satisfies the first prong of *Israel, supra.*

Secondly, it is axiomatic that taking minor children from under parental supervision is a matter of sufficient public interest. We also believe that the public interest will be served by providing guidance regarding this matter to the public, the bar and the court system. The issue clearly involves a vital public function—serving the best interest of our minor children. The second prong of *Israel, supra,* is therefore satisfied.

Finally, because domestic violence protective orders are, by statute, limited in duration, it is likely that instances of similar circumstances as raised in this appeal have and will in the future escape appellate review "because of their fleeting and determinative nature." The third prong of *Israel, supra,* is also satisfied.

For the reasons stated above, and because it is foreseeable that minor children in the future may attempt to file domestic violence petitions, the questions raised in the instant appeal remain justiciable. *See White v. Linkinoggor,* 176 W.Va. 410, 412, 344 S.E.2d 633, 635 (1986).

The principle of mootness has proper application in this case because the underlying domestic violence protective order has expired and the custody issue raised has been resolved. We therefore find that the instant case is moot; however, we decline to dismiss the appeal.

### A.

■ The appellant mother, Katherine B. T., challenges the fact that Richard B., a minor, filed a domestic violence petition on his own behalf and asserts that the family court exceeded its legitimate authority by failing to dismiss the petition. We disagree.

■ This issue involves, in part, a matter of statutory interpretation. We held in Syllabus Point 5 of *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars,* 144 W.Va. 137, 107 S.E.2d 353 (1959) that:

When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.

The appellant first cites to *W.Va.Code,* 48-27-305(2) (2001), which states:

A petition for a protective order may be filed by:

. . .

(2) An adult family or household member for the protection of the victim or for any family or household member who is a minor child or physically or mentally incapacitated to the extent that he or she cannot file on his or her own behalf[.]

The appellant, however, fails to consider the first paragraph of *W.Va.Code,* 48-27-305(1) (2001), which states:

A petition for a protective order may be filed by:

(1) A *person* seeking relief under this article [W.Va.Code, 48-27-1 et seq.] for herself or himself.

(Emphasis added.)

The appellant further fails to consider the express language of *W.Va.Code,* 48-27-304(b) (2001) which states:

(b) No *person* shall be refused the right to file a petition under the provisions of this article. No *person* shall be denied relief under the provisions of this article if she or he presents facts sufficient under the provisions of this article for the relief sought.

(Emphasis added.)

In order to resolve the question of whether or not a minor may *file* a domestic violence

petition, we need only determine whether or not the legislature intended to include minors as *persons* who may file a domestic violence petition and thus obtain relief under the statute.

A person is defined as a "human being." [9] *W.Va.Code*, 48–27–204 (2002), in defining the term "Family or household member" recognizes "child or stepchild" as a *person*. [10] Finally, we look to legislative findings and purposes in the enactment of the domestic violence statute. *W.Va.Code*, 48–27–101 (2001) states, in part, as follows:

§ 48–27–101. Findings and purposes.

(a) The Legislature of this state finds that:

(1) Every *person* has a right to be safe and secure in his or her home and family and to be free from domestic violence.

(2) Children are often physically assaulted or witness violence against one of their parents or other family or household members, violence which too often ultimately results in death. These children may suffer deep and lasting emotional harm from victimization and from exposure to domestic violence;

. . .

(Emphasis added.)

This section clearly expresses a legislative concern that children be protected from domestic violence and that they be treated as *persons* entitled to the protections of the domestic violence laws. We are persuaded that the language in this section is intended to include the protection of all victims of domestic violence, including minors. [11]

We believe that the clear and unambiguous intention of the legislature was to create a system for addressing domestic violence issues which would be open to all persons. Because we find that the statute is clear and unambiguous and that the legislative intent is plain, our duty is simply to apply the statute.

■ We therefore hold that under *W.Va. Code*, 48–27–305 (2002), a minor may file a petition for a domestic violence protective order.

### B.

Having answered the question as to whether or not a minor may file a domestic violence petition, we next turn to the procedure to be applied under these circumstances.

The appellant cites to *W.Va.Code*, 56–4–9 (1923) which states that ". . . any minor entitled to sue may do so by next friend or guardian." [12] The appellant also asserts the application of *W.Va.Code*, 50–5–3 (1978) which requires that infants proceed or be proceeded against by a next friend or guardian in civil actions in magistrate court. [13] Fi-

**9.** *Black's Law Dictionary*, Eight Edition, West Publishing Co., 2004.

**10.** *W.Va.Code*, 48–27–204 (2002) states:

"Family or household members" means persons who: . . .
(7) Have the following relationships to another person: . . .
(H) Child or stepchild; . . . .

**11.** *W.Va.Code*, 48–27–101(2001), states, in part, as follows:

§ 48–27–101. Findings and purposes.
(b) This article shall be liberally construed and applied to promote the following purposes:
(1) To assure victims of domestic violence the maximum protection from abuse that the law can provide; . . .

**12.** *W.Va.Code*, 56–4–9 (1923) states:

Minors may sue by next friend or guardian; substitution of plaintiffs.
Any minor entitled to sue may do so by next friend or guardian. When the action or suit is brought by his next friend, the court may, for good cause, substitute the guardian in lieu of the next friend, or any other person as the next friend.

**13.** *W.Va.Code*, 50–5–3 (1978) states:

§ 50–5–3. Appointment of guardian ad litem.
No infant, incompetent person or incarcerated convict shall proceed or be proceeded against in a civil action in magistrate court unless the provisions of this section are complied with.
Whenever an infant, incompetent person or incarcerated convict has a duly qualified representative, such as a guardian, curator, committee or other like fiduciary, such representative may sue or defend on behalf of the infant, incompetent person or convict. If a person under any disability does not have a duly qualified representative he may sue by his next friend. The magistrate shall appoint some suitable person who shall not be required to be an attorney-at-law as guardian ad litem for an infant, incompetent person or incarcerated convict not otherwise represented in an action.

nally, the appellant also cites Rule 17(c) of the *West Virginia Rules of Civil Procedure* as support for requiring a minor to proceed in a domestic violence case by a next friend or guardian.

We believe a domestic violence proceeding under *W.Va.Code,* 48–27–101, *et. seq.,* is a remedial statute designed for the protection of the persons as defined in the statute and is to be liberally construed to accomplish its purposes. The Court has also adopted a comprehensive set of rules to govern the practice and procedure in civil domestic violence cases; however, the rules do not address whether or not a minor is required to proceed by next friend or guardian.

■■■■ We agree with the appellant that both our statute and our rules provide that a minor must have either a next friend or guardian in order to prosecute or defend civil actions generally.

The record in the instant case reflects that the minor *was* accompanied by an adult, namely his sister Jennifer M., at the time of the filing of the domestic violence petition and at the final hearing on the petition. Also, the family court judge recognized the minor's adult sister, Jennifer M., as his next friend at the final hearing and allowed her to remain in the hearing as a party while other witnesses were segregated from the hearing. Jennifer M. was, therefore, acting and recognized by the court as the *de facto* next friend of her minor brother Richard B.

■■■■ Because our domestic violence rules do not speak specifically to domestic violence petitions that may be initiated by minors, we believe it would be helpful to our courts and to litigants for this Court to adopt a procedure to be applied in such cases. We, therefore, hold that when a minor, without a next friend or guardian, files a petition for a protective order under *W.Va.Code,* 48–27–101, *et seq.,* the court in which the petition is filed

shall immediately upon filing of the petition appoint a guardian *ad litem* for the minor.

## C.

■■■■ Finally, we turn to the appellant's argument that the family court abused its discretion when it did not report to the DHHR suspected abuse claimed by the appellant.

The appellant argues that this issue is governed by Rule 47(a) of the *Rules of Practice and Procedure for Family Courts* [14] which states:

> (a) *Reports by family court judges.*—If a family court judge has reasonable cause to suspect any minor child involved in family court proceedings has been abused or neglected, that family court judge shall immediately report to the state child protective services agency and the circuit court.

In the instant case the record reflects that the magistrate notified the Jefferson County Department of Health and Human Resources office by FAX of the domestic violence petition and the emergency protective order when the order was issued. The record also reflects that the magistrate called the "hotline" and spoke to a DHHR worker to report the incident. From the record, it also appears that the FAX was sent to the family court judge.

We believe that since the magistrate reported the matter to the DHHR and also notified the family court judge that the report was made, there was no necessity for the family court judge to duplicate the report to the DHHR.

We do, however, believe that the better practice would be to follow the strict language of Rule 47 of the *Rules of Practice and Procedure for Family Court* [15] even if the petition and incident had been previously reported to the DHHR. This practice could

---

**14.** This Court has adopted changes to Court rules effective April 3, 2006, regarding reporting of suspected abuse and neglect and accountability which, when followed, should minimize the probability of any instances of abuse and neglect escaping prompt attention by the Department of Health and Human Resources. *See* Rule 48 of the *Rules of Practice and Procedure for Family*

Court; Rule 3a. of the *Rules of Procedure For Child Abuse and Neglect Proceedings;* and Rule 16a of *Rules of Practice and Procedure for Domestic Violence Civil Proceedings.*

**15.** Rule 48 of the *Rules of Practice and Procedure for Family Courts,* effective April 3, 2006.

help assure that no case "slips through the cracks."

We therefore hold that in any domestic violence case, when any circuit court judge, family court judge, or magistrate has reasonable cause to suspect that a child is neglected or abused, the circuit court judge, family court judge, or magistrate shall immediately report the suspected neglect or abuse to the state child protective services agency pursuant to *W.Va.Code,* 49–6A–2 (2006) and, if applicable, Rule 48 of the *Rules of Practice and Procedure for Family Court.* When a petition for domestic violence is filed (typically magistrate court) and the judge or magistrate has reasonable cause to suspect that a child is neglected or abused, it would also be the better practice for the court to require the attendance of a representative of the DHHR at all proceedings.

## IV.

### *Conclusion*

In consideration of the foregoing, we affirm the circuit court's dismissal of the appellant's petition for a writ of prohibition and deny the requested relief. We further hold that in any domestic violence case which is initiated by a minor, our courts shall be guided by the holdings of this case.

Affirmed.

MAYNARD, Justice, dissenting.

(Filed Dec. 4, 2006)

This Court continues to decide cases that are devastating to West Virginia families. This is one such case. This decision is simply anti-family. Specifically, the majority has undermined the authority of every parent in West Virginia by permitting minor children to file domestic violence petitions on their own behalf.

Not only does this decision allow minors to file domestic violence petitions against their parents, it permits non-family members—actually strangers—to gain control and custody of children. Just look what happened here. The child who filed the domestic violence petition against his mother has ended up in the custody of an officious intermeddler with whom he has no family relationship. He is a man who lives in another state and who apparently entered this child's life around the time of his father's death and pursued a "mentor" relationship with him, whatever that is. Although the child's mother strongly felt that this relationship was inappropriate, her hands were tied as result of the protective order entered upon the filing of the domestic violence petition. Here is how outrageous this case is: while the protective order was in place, the mother was not permitted to have any contact with her own child or object to his placement with a single man living alone. In fact, when she had her husband and family members try to contact this man to check on the welfare of her child, the court found her in contempt.

The record shows that the family court placed the child in this man's custody without conducting any independent inquiry into his fitness or ability to provide a suitable home for a teenage boy. Now, this man, whose motives I personally find to be suspect, has unsupervised custody of this child and has him off in another state. In light of the facts of this case alone, I am astounded and troubled by the majority's decision.

The West Virginia Legislature long ago recognized that abuse and neglect by custodial parents represents a serious danger to many children in West Virginia. In order to address this problem, the Legislature enacted a series of statutes designed to protect the interests of all parties involved yet ensure that children will be removed from the custody of abusive or neglectful parents. In particular, W.Va.Code § 49-6-1 (2005) provides that the West Virginia Department of Health and Human Resources may file a petition seeking custody of any child who is believed to be abused or neglected. Further, the law provides that both the child and the parents will be provided with counsel and afforded an adequate opportunity to be heard. If there is a question regarding the fitness of any potential custodian, Child Protective Services can conduct a home study and provide the court with expert advice regarding the suitability of the proposed placement. Moreover, the important relationship between a child and his or her parents can be preserved

whenever possible through the use of improvement periods and supervised visitation. Of course, this process recognizes that "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) (citation omitted).

The majority's decision in this case circumvents this entire body of law by allowing minors to remove themselves from the custody of their parents through a domestic violence petition. Essentially, the majority opinion allows a fourteen-year-old boy who becomes angry at his mother for not buying him a video game or a sixteen-year-old girl whose dad will not let her see her boyfriend to effectively have their parents' rights terminated by filing a domestic violence petition

claiming that their parents are abusing them. While I certainly believe that minors should be protected from abusive parents, I cannot agree to the wholesale rejection of the procedural framework enacted by the Legislature to address this very problem. The potential for misuse of W.Va.Code § 48–27–305 by rebellious teenagers is obvious. Because the majority's decision turns the parent-child relationship on its head and has the potential to destroy many West Virginia families, I respectfully dissent.