**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**March 18, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**James J.,**
**Respondent Below, Petitioner,**

**v.)  No. 22-562** (Kanawha County, Civil Action No. 21-D-915)

**Sarah C.,**
**Petitioner Below, Respondent.**

**MEMORANDUM DECISION**

Petitioner James J., by counsel Scott L. Summers, appeals the Circuit Court of Kanawha County's June 8, 2022 Final Order limiting the amount of unsupervised time that his parents can spend with his minor daughter, L.J.[1] Respondent Sarah C. appears by counsel Erica Lord, and D. Randall Clarke appears as L.J.'s guardian ad litem (hereinafter "guardian").  On appeal to this Court, Petitioner argues that the circuit court erred in imposing any limitations upon the unsupervised time that his parents may spend with L.J.  Petitioner requests that this Court reverse the circuit court's order and remand the case to the circuit court with directions to enter an order removing any and all restrictions upon L.J.'s ability to visit with her paternal grandparents.

This Court has carefully considered the briefs and oral arguments of the parties, the submitted record, and the pertinent authorities.  Upon review, we agree with the circuit court's order restricting the amount of unsupervised time that L.J. is permitted to spend with her paternal grandparents.  Accordingly, we affirm the circuit court's order entered on June 8, 2022.  Because there is no substantial question of law, a memorandum decision is appropriate pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

The parties in this matter are the parents of one daughter, L.J.  On March 3, 2021, when L.J. was four years old, she disclosed to her day care teacher that she had been sexually abused by her then-eight-year-old cousin (hereinafter "minor

---

[1] We use initials where necessary to protect the identities of those involved in this case.  *See* W. Va. R. App. P. 40(e).

cousin") while both were at their paternal grandparents' home.[2] Respondent was called to L.J.'s school and informed of the disclosure. The disclosure was reported to Child Protective Services (hereinafter "CPS"). Respondent informed Petitioner and his current wife of the disclosure, and Petitioner, who was working out of state, returned home. Respondent also reported the disclosure to L.J.'s pediatrician, the Child Advocacy Center, and the St. Albans Police Department. Although the Child Advocacy Center declined to interview L.J., it referred Respondent to Colleen Moran, M.S., a licensed clinical psychologist at Harmony Mental Health, Inc.[3] Respondent and L.J. attended their first intake session with Ms. Moran approximately two weeks after L.J.'s initial disclosure.[4] Respondent continued to take L.J. to see Ms. Moran, and Petitioner attended one appointment on August 5, 2021. Both parents were provided information regarding trauma experienced by children. Ms. Moran advised that permitting L.J. to have continued contact with her minor cousin would re-traumatize her.[5] The following month, Petitioner got married, and pictures were taken at the wedding depicting L.J. and her minor cousin together.[6] Thereafter, Respondent instituted proceedings in the Family Court of Kanawha

---

[2] According to a police report from the St. Albans Police Department, L.J. disclosed during "circle time" that her minor cousin "would take her downstairs to a bathroom at her [paternal grandparents'] house" and "would make her pull down her pants and panties." L. J. also indicated that her minor cousin "would kiss her private parts and her butt." "She continued by stating [her minor cousin] had told her to lay on him with her pants down (his pants were down too) and his private was 'straight.'" L.J. indicated that she told her paternal grandmother, and her paternal grandmother confronted the minor cousin. During the January 3, 2022 hearing, the paternal grandmother denied that L.J. reported the minor cousin's conduct to her or that she confronted the minor cousin.

[3] Ms. Moran was included on a list of counselors that was provided by the Child Advocacy Center.

[4] According to Ms. Moran, L.J. first disclosed the sexual abuse to her in April 2021.

[5] Ms. Moran's report dated November 1, 2021, indicates that Petitioner "reluctantly" verbalized the need to protect L.J. from her minor cousin.

[6] Petitioner told the guardian that Respondent was aware that the minor cousin was going to be at his wedding.

County.[7]   Because neither of the parties had a court order establishing them as custodial parent or setting parenting time with L.J., both parties filed petitions for allocation of custodial responsibility.[8]

At the request of the parties, the family court appointed a guardian ad litem for L.J., and on December 1, 2021, the guardian filed his report.  A hearing was held on December 8, 2021, and, at that time, the parties informed the family court that they had reached an agreement "on the majority of the issues" that were before the court.  The parties agreed, among other things, to the exercise of parenting time, shared decision making, the elementary and middle school that L.J. would attend, and a method to select a new counselor for L.J.  In addition, the parties accepted some of the recommendations made by the guardian.  For purposes of this appeal, the relevant recommendations to which the parties agreed from the guardian's report are as follows:

> [L.J.] shall under no circumstances come into direct or indirect contact with her minor male cousin [] until further Order of the Court.
>
> [L.J.] is not permitted in the home of the paternal grandparents when her minor male cousin [] is present in their home.
>
> If [Petitioner] permits [L.J.] to be in the home of the paternal grandparents when her minor male cousin [] is present in their home, then the father's parenting time with the minor child will be suspended until a hearing can be held before the Court upon the issue of the modification of his parenting time with the minor child and until further Order of the Court.

Although the recording system failed or malfunctioned and the proceedings on December 8, 2021, were not recorded, the order from that hearing clearly informed the parties that another hearing would be held on January 3, 2022, at which "[t]he Court will take testimony and hear argument on whether there should be

---

[7] Petitioner filed a Petition for Allocation of Custodial Responsibility and a Motion for Emergency Temporary Relief.

[8] Following Respondent's filing, Petitioner filed a Counter Petition to Establish Allocation of Custodial Responsibility and Parenting Plan.

restrictions placed upon the ability of the Father to leave the minor child alone with the Paternal Grandparents, Child Support and Medical Support." At the beginning of the hearing on January 3, 2022, the parties informed the family court that they had reached agreement with respect to child support and medical expenses. They also informed the family court that they had been unable to reach an agreement as to the issue regarding L.J.'s visitation with the paternal grandparents, and the family court proceeded with a hearing related to that issue.

During the January 3, 2022 hearing, the family court heard testimony from the parties and the paternal grandmother. According to the testimony, L.J.'s disclosure in March 2021 was not the first time there had been an issue relating to the minor cousin. In October 2020, L.J. indicated that her minor cousin showed her an inappropriate video, which resulted in Petitioner asking his parents to agree that L.J. and the minor cousin would not be left alone together. The testimony of the paternal grandmother revealed that she does not believe L.J.'s allegations of sexual abuse. Although the paternal grandmother testified that she would "guarantee" that she would not permit the minor cousin to be in her home when L.J. was present or to come into contact with L.J., she also testified that she wants to see both of her grandchildren and that she "want[s] them to be together." She further testified that these two children "miss each other." The family court expressed some concern about the paternal grandmother's testimony and specifically noted that "the tone in her voice caused me to doubt her credibility just a little bit." The family court concluded that the paternal grandparents enjoyed a close relationship with L.J., and it attempted to fashion relief "that preserves [L.J.'s] relationship with the Paternal Grandparents while at the same time protecting [her] from harm in the future." Ultimately, the family court ordered that Petitioner not be permitted to leave L.J. in the unsupervised care of his parents for more than two (2) days per week and not more than three (3) hours at a time. However, the family court declined to impose any restrictions on the paternal grandparents' interaction with L.J. as long as Petitioner or his wife are present, and the minor cousin is not present.

Petitioner appealed the family court's decision to the circuit court and argued that the family court "inappropriately limit[ed] and restrict[ed] [his] rights as an equal custodial parent to make decision[s] concerning his minor child." By order entered on June 8, 2022, the circuit court affirmed the family court's order. Petitioner's appeal to this Court followed.

Although this appeal comes to us from the circuit court, we focus our review on the family court's January 12, 2022 order which the circuit court affirmed. As we have previously stated,

4

[i]n reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004). Guided by this framework, we will consider Petitioner's appeal.

We begin by noting that the restrictions at issue were requested by Respondent in her motion for emergency temporary relief. She requested that the paternal grandparents have only supervised visits with L.J. because of L.J.'s allegation that she was sexually abused by her minor cousin while she was in the care of the paternal grandparents. In addition, the Respondent alleged that L.J. told her grandparents about the abuse, and they did not inform either parent of this disclosure.

Before this Court, Petitioner contends that the family court improperly infringed upon his fundamental constitutional right as a fit parent to make decisions concerning the care, custody, and control of his daughter. Respondent argues that Petitioner's fundamental rights of care and custody are not impacted by the family court's order and, at most, the court's order dictates only how long he is permitted to leave L.J. unsupervised with his parents. With respect to this constitutional right, we have held that:

"[t]he Due Process Clauses of Article III, Section 10 of the Constitution of West Virginia and of the Fourteenth Amendment of the Constitution of the United States protect the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Syl. Pt. 3, *Lindsie D.L. v. Richard W.S.*, 214 W. Va. 750, 591 S.E.2d 308 (2003); *see also In re Antonio R.A.*, 228 W. Va. 380, 388, 719 S.E.2d 850, 858 (2011) ("the right of a natural parent to the custody of his or her infant child … is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.") (citation and footnote omitted); *Alyssha R. v. Nicholas H.*, 233 W. Va. 746, 753, 760 S.E.2d 560, 567 (2014) ("The right of a parent to make decisions concerning the care, custody, and

5

control of her children is among the most cherished fundamental liberty interests.") (citation omitted); *Hammack v. Wise*, 158 W. Va. 343, 348, 211 S.E.2d 118, 121-122 (1975) ("One's right to conceive and to raise his children has found protection in the Due Process Clause of the Fourteenth Amendment and also on the Equal Protection Clause thereof, as well as the comparable clauses of the West Virginia Constitution.") (citations omitted).[9]

*In re Adoption of J.S. and K.S.,* 245 W. Va. 164, 169-170, 858 S.E.2d 214, 219-220 (2021) (footnote added). While this right is well-established, it is important to recognize that this right does not apply only to Petitioner. Respondent also has the same fundamental right. Indeed, when faced with competing rights, albeit in the context of abuse and neglect cases, we have held that "[c]ases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren)." Syl. Pt. 7, *In re Brian D.*, 194 W. Va. 623, 461 S.E.2d 129 (1995).

Petitioner relies heavily upon this Court's decision in *In re Adoption of J.S. and K.S.* in support of his argument that the family court erred in restricting his ability to decide how often his parents can see L.J. without supervision. In *In re Adoption of J.S. and K.S.*, this Court overturned a restriction placed on an adoptive mother prohibiting her from permitting any contact between her children and her ex-husband. Although Petitioner maintains that this holding supports his position that he has a constitutional right to permit L.J. to visit with his parents without the restrictions imposed in this case, we disagree. In the instant case, there is a clear conflict between Petitioner's desire to have no restrictions on the unsupervised time that his parents spend with L.J. and the Respondent's desire to maintain the restrictions on visitation with the paternal grandparents which the family court concluded were in the best interest of L.J.

---

[9] This fundamental right has also been recognized by the United States Supreme Court. *See Troxel v. Granville,* 530 U.S. 57, 65 (2000) ("[t]he liberty interest at issue in this case – the interest of parents in the care, custody, and control of their children -- is perhaps the oldest of the fundamental liberty interests recognized by this Court.").

The fundamental constitutional right at the heart of Petitioner's argument is not absolute. *See In re F.S. and Z.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014) ("while a parent's right is fundamental, it is certainly not absolute.") "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, *as in all family law matters*, must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) (emphasis added). "[P]arental rights must sometimes yield in situations where they are in conflict with the best interests of the child[.]" *In re Adoption of J.S. and K.S.*, 245 W. Va. at 170, 858 S.E.2d at 220. "In visitation as well as custody matters, we have traditionally held paramount the best interests of the child." Syl. Pt. 5, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996). "'The best interests of the child is the polar star by which decisions must be made which affect children.' *Michael K.T. v. Tina L.T.,* 182 W. Va. 399, 405, 387 S.E.2d 866, 872 (1989)." *Kristopher O. v. Mazzone*, 227 W. Va. 184, 192, 706 S.E.2d 381, 389 (2011).[10]

The family court properly considered the best interests of L.J. pursuant to *Kristopher O. See id.* Although the parties appear to have reached agreements as to many, if not all, of the other issues in this case, they were unable to reach an agreement about unsupervised visits between L.J. and her paternal grandparents. The family court expressly recognized that the paternal grandparents enjoyed a close relationship with L.J., and it concluded that it was "important to fashion relief that preserves the child's relationship with the Paternal Grandparents while at the same time protecting the minor child from harm in the future." The family court's concern for potential harm in the future is supported by the testimony. L.J. disclosed that she had been sexually abused while in the care of her paternal grandparents. Petitioner testified that he understood if L.J. and her minor cousin are ever together

---

[10] Petitioner disagrees with the family court's decision to weigh his rights against the court's responsibility to protect the best interest of L.J. Specifically, Petitioner argues that this Court has found this rationale to be "without merit" and "improper" with regard to a fit parent's determination of who should be permitted to see a child. However, given this Court's cases cited *supra*, we find Petitioner's argument in this regard to be unavailing. Further, Petitioner primarily relies upon cases involving the assertion by grandparents of their right to visitation, which is not present in the instant case. However, even if we were examining this case under the lens of the Grandparent Visitation Act, we would still have to consider the best interests of the child as "[t]he best interests of the child are expressly incorporated into the Grandparent Visitation Act." Syl. Pt. 2, in part, *In re Hunter H.*, 231 W. Va. 118, 744 S.E.2d 228 (2013).

in his parents' home, that he would immediately lose his parenting time with his daughter. Although his mother also expressed her understanding of this restriction, she testified that she did not believe that L.J. had been sexually abused by the minor cousin while she was caring for both of the children. In addition, she testified that she thought the children missed one another and she wanted them to be together. The family court also heard testimony from Petitioner that his mother had been experiencing signs of forgetfulness. Although Petitioner believes that the risk of harm to L.J. has been removed by prohibiting her from being in contact with her minor cousin, the family court did not agree. After hearing the testimony in this case, the family court concluded that it had concerns with the paternal grandmother's credibility. We will not disturb this credibility determination. *See Mulugeta v. Misailidis*, 239 W. Va. 404, 408-409, 801 S.E.2d 282, 286-287 (2017) ("It is within the sole province of the family court, as fact-finder, to decide issues of credibility, and this Court will not disturb those determinations.")

Petitioner maintains that because he is a fit parent, the court may not interfere with his parenting decisions as to whether L.J. can be left unsupervised with her paternal grandparents. Petitioner believes that the family court was required to conclude that he is unfit before it could proceed to make decisions concerning the care, custody, and control of L.J. This argument is based, in part, on this Court's holding that "[t]here is a presumption that fit parents act in the best interests of their children." Syl. Pt. 4, *Lindsie D.L. v. Richard W.S.*, 214 W. Va. 750, 591 S.E.2d 308 (2003). This is, however, merely a presumption, not a declaration that a fit parent can make unilateral decisions about a child that is involved in a family court matter. Family courts make decisions regarding the care, custody, and control of children on a daily basis, and these decisions are largely made without a finding that one parent is unfit.[11] When two fit parents do not agree on an issue regarding their child in a custody matter, it is often incumbent upon a family court to resolve the dispute. Such decisions necessarily affect the ability of one or both parents to make unilateral decisions regarding the child as it did here.

Petitioner further argues that Respondent did not articulate a rational basis for the restrictions at issue here. We are not persuaded by this argument. As we have previously noted, the family court heard testimony regarding the allegations of

---

[11] In this case, the family court would have decided the custody arrangement for L.J. had the parties not reached an agreement. In addition, family courts often make decisions such as where children attend school and whether parents can relocate with their children.

sexual abuse against L.J. while she was in the care of the paternal grandparents. Despite testifying that that she did not believe L.J., the paternal grandmother testified that she would keep the minor cousin away from L.J. However, this testimony was followed by her declaration that she wants the children to be together. Given this testimony, as well as testimony regarding the paternal grandmother's forgetfulness and the family court's concerns with her credibility, the family court did not abuse its discretion in placing the restriction regarding unsupervised visits.

Finally, although not raised or briefed by the parties, we remind family courts in cases such as this of their obligation to report suspected abuse or neglect pursuant to Rule 48 of the West Virginia Rules of Practice and Procedure for Family Court. "If a family court has reasonable cause to suspect any minor child involved in family court proceedings has been abused or neglected, that family court shall immediately report the suspected abuse or neglect to the state child protective services agency, pursuant to W. Va. Code § 49-6A-2, and the circuit court." W. Va. R. Prac. & Proc. For Fam. Ct. 48. Here, by the time the parties sought court intervention, at least two referrals had already been made to CPS regarding L.J.'s disclosure of sexual abuse. It appears that both of those referrals resulted in no further action due to the fact that the alleged perpetrator of the abuse was also a minor. Therefore, any referral that might have been made by the family court would have been duplicative. For this reason, we find the failure of the family court to make a referral under the facts of this case to be harmless. Although we find this to be harmless error, as we have noted in the past, we "believe that the better practice would be to follow the strict language of Rule [48] of the Rules of Practice and Procedure for Family Court" and report the suspected abuse even if other reports had previously been made to the state child protective services agency. *Katherine B.T. v. Jackson*, 220 W. Va. 219, 227, 640 S.E.2d 569, 577 (2006).

For the foregoing reasons, we conclude that the family court did not abuse its discretion in imposing restrictions on L.J.'s visitation with her paternal grandparents. Accordingly, the circuit court did not err in affirming the family court's order. Based upon all of the foregoing, the order of the circuit court is affirmed.

Affirmed.

**ISSUED**: March 18, 2024

**CONCURRED IN BY**:

9

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton

**CONCURRING, IN PART, AND DISSENTING, IN PART:**

Justice C. Haley Bunn

BUNN, Justice, concurring, in part, and dissenting, in part:

I agree with the majority's decision to uphold the limitations on grandparent visitation ordered by the family court. The allegations that L.J. was sexually abused by a cousin while in the paternal grandparents' care, and the grandparents' denials that the abuse occurred, demonstrate that it was in L.J.'s best interest to put appropriate and immediate safeguards in place. *See* Syl. pt. 5, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996) ("In visitation as well as custody matters, we have traditionally held paramount the best interests of the child."). *See also* Syl. pt. 3, in part, *id.* ("Because of the extraordinary nature of supervised visitation, such visitation should be ordered when necessary to protect the best interests of the children.").

However, I respectfully dissent from the majority's determination that the family court's failure to refer the new allegations of abuse and neglect to Child Protective Services ("CPS") and the circuit court was harmless error. The majority has overlooked the express, mandatory language of the governing rule and has not fully considered the factual circumstances giving rise to this appeal.

Pursuant to Rule 48 of the West Virginia Rules of Practice and Procedure for Family Court,

> [i]f a family court has reasonable cause to suspect any minor child involved in family court proceedings has been abused or neglected, that family court *shall* immediately report the suspected abuse or neglect to the state child protective services agency . . . and the circuit court.

W. Va. R. Prac. & P. for Fam. Ct. 48(a) (emphasis added). As we have repeatedly recognized, "use of the word 'shall' renders the[] directive[] mandatory." *In re Z.S.-1*, 249 W. Va. 14, __, 893 S.E.2d 621, 628 (2023) (citation omitted). *See also* Syl. pt. 1, in part, *Nelson v. W. Va. Pub. Emps. Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982) ("It is well established that the word 'shall' . . . should be afforded a

10

mandatory connotation."). Thus, the express language of Rule 48 imposes a mandatory duty upon family court judges to immediately report suspected child abuse and neglect. *See* Syl. pt. 3, in part, *State ex rel. W. Va. Dep't of Health & Hum. Res. v. Ruckman*, 223 W. Va. 368, 674 S.E.2d 229 (2009) (referencing "*mandatory* reporting of abuse or neglect pursuant to . . . Rule 48 of the Rules of Practice and Procedure for Family Court" (emphasis added)).

This mandatory reporting duty for family court judges is also codified in West Virginia Code § 49-2-803(a). *See* W. Va. Code § 49-2-803(a) (identifying "family court judge[s]" as among individuals who, upon having "reasonable cause to suspect that a child is neglected or abused, . . . *shall* immediately . . . report the circumstances to the Department of . . . Human [Services]" (emphasis added)). *See also* Syl. pt. 8, *Katherine B.T. v. Jackson*, 220 W. Va. 219, 640 S.E.2d 569 (2006) ("When any circuit court judge, family court judge, or magistrate has reasonable cause to suspect that a child is neglected or abused, the circuit court judge, family court judge, or magistrate shall immediately report the suspected neglect or abuse to the state child protective services agency pursuant to *W. Va. Code*, [49-2-803] and, if applicable, Rule 48 of the *Rules of Practice and Procedure for Family Court*.").

Moreover, the majority conflates the allegations of abuse and neglect at issue before the family court with the original allegations that L.J. was sexually abused by a minor male cousin while the grandparents were caring for both children in the grandparents' home in the Spring of 2021. The record reflects that both L.J.'s mother and teacher reported the original incident to CPS, and that the referral was "screened out" without investigation because it involved two children.

However, new allegations of abuse and neglect gave rise to the underlying custody proceeding that resulted in this appeal, and it is those new allegations of abuse and neglect that triggered the family court's duty to refer the matter to CPS and the circuit court. After the Spring 2021 incident of sexual abuse, L.J.'s mother sought therapy for L.J., and the therapist recommended that L.J. not have contact with her minor male cousin because interacting with her abuser would be traumatic for her. The therapist also cautioned L.J.'s father against allowing further interactions between the two children.

Nevertheless, in the Fall of 2021, L.J.'s father married, and during the wedding reception, either the father or the paternal grandparents allowed L.J. and her minor male cousin to interact with each other. It is this incident of failing to heed the advice of the child's therapist by knowingly allowing L.J. to have interactions with her alleged abuser that prompted L.J.'s mother to file the underlying custody proceeding. The interaction between the children potentially subjected L.J. to further trauma, and constituted new allegations of abuse and neglect by the child's father

11

and/or her paternal grandparents. The father's and paternal grandparents' failure to protect L.J. from additional interactions with her alleged abuser triggered the family court's mandatory duty to refer such allegations to CPS and the circuit court. It does not appear from the appendix record that these new allegations concerning the actions of the child's father or her paternal grandparents were ever referred to CPS for investigation or to the circuit court. Therefore, the family court's failure to report this new incident of abuse and neglect constitutes reversible error, and the case should be remanded to the family court to require it to comply with the mandatory reporting duty in Rule 48.

Finally, even if, as the majority has suggested, the family court's report of the allegations of abuse and neglect giving rise to the underlying case had been duplicative, this Court has cautioned that "the better practice would be to follow the strict language of Rule 4[8] of the *Rules of Practice and Procedure for Family Court* even if the petition and incident had been previously reported to the [DHS]. This practice could help assure that no case 'slips through the cracks.'" *Katherine B.T.*, 220 W. Va. at 227-28, 640 S.E.2d at 577-78 (footnote omitted). Therefore, the family court still should have reported the alleged abuse and neglect of L.J. to ensure the child's safety and well-being.

For these reasons, I respectfully concur, in part, and dissent, in part, from the majority's decision in this case.